THE CLAVERBURN.

(District Court, S. D. New York. September 19, 1906.)

1. Shipping—Loss of Cargo from Leakage—Exception in Bill of Lading.

A provision of a bill of lading that the shipowner shall not be liable for loss by leakage protects him as to all leakage, however great, unless caused by negligence, which must be shown to establish his liability.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 493.]

2. Same—Damage to Cargo of Wood Oil—Improper Packages.

A loss through leakage of wood oil shipped from China to New York in ordinary barrels held not to have been due to improper stowage but to the insufficiency of the packages, for which the carrier was not liable under the terms of the bill of lading, it being shown that such oil has a tendency to shrink the barrels and cause leakage unless they are specially prepared.

In Admiralty. Suit for damage to cargo.

Stimson & Williams, Avery F. Cushman, and Victor M. Hungerford, for libellants.

Convers & Kirlin, for claimant.

ADAMS, District Judge. This action was brought by Louis C. Gillespie and others, against the steamship Claverburn, to recover the damages they sustained through the alleged negligent stowage of 272 barrels of China Nut Oil, known commercially as Wood Oil, at Shanghai, on the 5th day of October, 1904, bound on a voyage to New York. When she arrived there, the barrels of oil were found to be deficient in contents to a considerable extent and the libellants allege that the consequent loss, amounting to some $1,700, was in consequence of improper stowage and that large and heavy cargo was stowed on top of the barrels in such a manner that the weight of the cargo was allowed to press directly upon the bilges of the oil barrels and thus injured many of them. The answer denied the allegation of improper stowage and set forth the exceptions contained in the bill of lading, which, among other things, provided that the ship should not be liable for insufficient packing, reasonable wear and tear of packages, leakage, drainage, inherent quality or vice of the goods shipped.

The oil was brought from Hankow, China, to Shanghai by another steamer and there loaded upon the Claverburn in good order and stowed, properly dunnaged, upon the bottom of No. 2 hold, in two tiers, each barrel in the second tier resting upon the quarters of four barrels in the lower tier. The steamer then proceeded to Singapore, where some of the barrels were re-stowed, so that from that port they were in three tiers. Up to Singapore nothing was stowed on top of them, but there a platform was built over the barrels and raised sufficiently to keep the weight of the superincumbent cargo off and clear of the bilges of the top tier of barrels. On this platform were stowed cases of jelotung which also extended over some bags of gambier stowed on the floor of the hold forward of the oil and separated from it by a partition of deal. This took the place of some coal which had been stowed there and was used on the voyage up to that place.

The gambier received some damage to cover which the ship tendered and paid into court a sufficient sum, and there only remains for decision the questions concerning the oil. No unusual weather was encountered on the voyage. There was a large and somewhat unusual amount of damage, said to amount to 26½ per cent., while it appeared that many shipments had been brought here with small damage, about 4 per cent., and some came without any.

The mere fact that there has been excessive damage does not, however, prevent the ship from resorting to proper exceptions with reference to the character of the cargo or packages. In The Helene, L. R. 1 Privy Council, 231, it was said (240):

"The condition that the shipowners are not to be accountable for leakages does not, in its ordinary and grammatical sense, put any limit to the quantity of leakage; and on principle, therefore, we do not think it would be justifiable to add any such limit to its terms. Nor are we aware of any authority for doing so. It follows that, in our judgment, the memorandum in the bill of lading protects the shipowner as to all leakage except that caused by negligence, and, therefore, if no negligence is shown, there is no cause of action."

The question therefore is, was there negligence in the stowage? The testimony seems to be almost uniform that the method adopted was proper. There was no superincumbent cargo until the Singapore shipment was taken aboard, yet evidence of leakage was discovered after the ship left Shanghai and before there was any weight whatever above the oil barrels. There the jelotung was loaded but there was then no detrimental weight. The leakage, however, continued to the end of the voyage, notwithstanding usual and careful stowage.

The testimony satisfactorily shows that this kind of oil possesses drying qualities and has a tendency to shrink the barrels, to render the wood brittle, and almost invariably causes the barrels to leak and drain heavily when carried in large shipments. At one time this oil was imported in iron drums and latterly the libellants, who are large importers, have instructed their Chinese correspondents to ship it in barrels of special construction lined with glue and paper.

When the libellant Gillespie was first examined as a witness, he said that he had examined two barrels of the shipment which were brought into court as exhibits and that they were of the special construction designed for this trade. Upon an examination, however, it proved that they were not specially built or lined as he testified they were and he was compelled to admit that they were not such barrels but merely ordinary oil barrels. These must be regarded as fair samples of all the barrels. It is apparently well established that ordinary barrels are not proof against the qualities of this oil and I have concluded that the packages were insufficient to safely transport it, and that the damages must be deemed to be due to that cause.

It follows that the libel should be dismissed.