NEW YORK MILLINERY & SUPPLY CO. v. HAMBURG–AMERIKANISCHE PACKETFAHRT–ACTIEN–GESELLSCHAFT.

(District Court, S. D. New York.   June 10, 1909.)

CARRIERS (§ 59*)—DAMAGE TO CARGO—BILL OF LADING.

Where a carrier receives goods for transportation knowing, or having reason to know, that some of them are not in good condition and issues a bill of lading reciting that they are "in good order and condition" and the bill of lading passes into the hands of an innocent purchaser for value, the carrier is not permitted to assert the contrary of the bill of lading statement.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 179; Dec. Dig. § 59.*]

(Syllabus by the Judge.)

Kneeland & Harison, for libellant.
Wheeler, Cortis & Haight, for respondent.

ADAMS, District Judge.   This action was brought by the New York Millinery & Supply Company against Hamburg-Amerikanische Packetfahrt-Actien-Gesellschaft to recover the damages it sustained, said to amount to $3,341.32, by reason of the contents of 92 cases of straw hats being found damaged upon delivery in New York the 18th of November, 1907. The shipment was made on the 28th of October, 1907, at Genoa, Italy, by the respondent's steamer Batavia. The libellant in addition to the ordinary averments of the purchase of the goods near Florence, Italy, and the issuance and delivery of a bill of lading by the respondent, acknowledging the receipt of the merchandise in good order and condition, alleged as follows:

"VII. That the respondent has informed the libellant that said goods were received on board the respondent's said steamer at Genoa during rain and some of them were wet and damaged by water when so received, that the statement in said bill of lading that said goods were shipped in good order and condition was false and untrue, and at the time of making it was known to be false and untrue to the respondent or its agents signing said bill of lading, who then received from said F. Henry Humbert a written request for a clean bill of lading, by which request said Humbert agreed to take upon himself the responsibility for any claim that might be presented to the respondent by the consignee of said goods on account of their being wet and damaged and not

in good order or condition at the time of shipment. That the libellant accepted said goods in reliance upon said bill of lading and paid for them in reliance thereon without any deduction for damage, and that the libellant does not know whether the information so received by it from the respondent as to the time, place and manner of the occurrence of said damage is or is not true and correct, nor does the libellant know when, where or how said damage occurred, except as is hereinbefore alleged by it."

The answer admits the shipment of the goods, the delivery of the bill of lading, and that at the time of the delivery it received from Humbert a written request for a clean bill of lading and that he executed the indemnity mentioned in the seventh article of the libel. It alleges that it has no information sufficient to form a belief as to several articles of the libel and therefore denies them.

It appears from the testimony that the goods had been purchased by the libellant from Augusto Filippinni of Brozzi, near Florence, Italy, and had been shipped at Genoa by the vendor's forwarding agent, F. Henry Humbert. The respondent issued to the latter its bill of lading, dated October 28, 1907, acknowledging the receipt of the merchandise "in good order and condition" and agreeing to deliver it to the libellant in New York. When they were delivered, it was found that 92 out of the 147 cases receipted for were damaged by water, while the cases remained dry on the outside, showing no signs of damage to the contents. The hats were damp and warped and in many cases heavily mildewed and in some instances water actually ran out of the bundles after the cases were opened.

It is not clear where the damage occurred but in any event an explanation was due from the carrier. No such explanation is given other than what appears in some correspondence introduced in evidence. A letter produced by the respondent and introduced in evidence by the libellant, was as follows:

"Translation.

Hamburg–American Line,
Freight Department. Genoa, October 29th, 1907.
Mr. F. Henry Humbert.
B/L 85
Please hand over to me the B/L for 151 cases straw goods, shipped by me per s/s 'Batavia' without putting any observation on same, taking upon me the responsibility for any claim that might be presented to you by the consignee on account of the following observations of the officer on board.
The Shipper
[Signed] F. Lanza
(Genoa Manager of the firm F. H. Humbert)
Divers cases wet.
Cases fragile.
No 574 & 584 less in dispute."

This letter was forwarded to the New York agents of the respondent with a request that it should not be shown to the representatives of the libellant. There was no testimony to show that any damage had been received by the goods while in the possession of the respondent, and doubtless the true explanation is that they were damaged when shipped and known to be so by the respondent, or, at least, it was put upon inquiry. The bill of lading therefore was incorrect in stating that the hats were in good order and condition. The libellant

had no knowledge of the falsity of the bill of lading and relied upon it in making its payment for the hats.

The case of Compania Naviera Vascongada v. Churchill & Sim, 10 Mar. Law Cas. 177, is quite closely in point. There the consignees of a quantity of timber shipped not "in good order and condition" though so receipted for in the bill of lading, were sued by the carrier for freight and counterclaimed for damage to the timber. It appeared that the damage had been sustained prior to the shipment and had actually been noticed at that time; that the consignees had in good faith accepted the bill of lading as evidence of the condition of the timber and paid the vendors the full contract price on the faith of it. It is therefore very similar to this case. Channell, J., in deciding in favor of the estoppel said:

"It seems to me, however, that the case does come within the recognized rules as to estoppel. The statement, as I have pointed out, is one of fact. If not exactly intended to be acted on, it must be known that it would probably be acted on. Bills of lading are transferable, and the object of the shipper in asking for the insertion of the statement that the goods are in good condition at the time of shipment is clearly rather to have evidence to offer to his transferee than for his own direct benefit. The advantage of what is known as a clean bill of lading is obvious, and I think it would be idle for a master of a ship to say that he did not contemplate a purchaser of the goods acting on the statement that the goods were shipped in good condition."

A respondent cannot ordinarily be expected to know about the condition of the contents of the packages but here it did know and took the chances of delivering packages as good and sound when it was advised that, in all probability, there would be a claim by reason of some of the cases being wet, etc. I think that the libellant's claim is well established.

Decree for the libellant, with an order of reference.