## THE KÖNIGIN LUISE.

(District Court, S. D. New York. November 10, 1909.)

SHIPPING (§§ 132, 152*)—DAMAGE TO CARGO—NEGLIGENT STOWAGE—FREIGHT PAID IN ADVANCE.

Damage to cargo and loss of freight paid in advance. *Held*, that in view of the addition to the exception of exemption for leakage and breakage, the words "or any other injury resulting from the natural condition of the goods shipped," etc., the burden was upon the carrier to show how the damage was sustained, it not being a case of insufficient packages but of negligence in handling them; also *held* that the freight paid in advance on goods not delivered should be recovered back.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 479, 481, 514; Dec. Dig. §§ 132, 152.*

Burden of proof as to cause of loss or injury to goods shipped by vessel and diligence or negligence of carrier, see note to The Patria, 68 C. C. A. 398.]

(Syllabus by the Judge.)

In Admiralty. Action by the Oil Seeds Company against the steamship Königin Luise to recover for injuries to cargo and money paid in advance for freight. Decree for libellant.

Wilcox & Green, for libellant.

Choate & Larocque, for claimant and respondent.

ADAMS, District Judge. This action was brought by the Oil Seeds Company against the steamship Königin Luise and the North German Lloyd to recover the damages, said to be $1,762.04, which amount includes the sum of $463.21 paid in advance for freight. The libel alleges that on or about the 23rd of August, 1907, Antoine Reggio & Co., shipped at Smyrna, Turkish Asia, on the steamship Therapia, in good order and condition, and free from damage, 200 barrels of olive oil to be carried to Genoa, Italy, and to be forwarded from that port by the Princess Irene, or other steamship of the respondent, to the port of New York, and there delivered in like good order and condition to the order of C. B. Richard & Co., upon payment of freight and charges; that the said Reggio & Co. received a bill of lading for said merchandise, whereby it was agreed that the same should be carried and delivered as aforesaid, and thereafter said bill of lading was duly endorsed by said C. B. Richard & Co. and delivered to libellant, for value, and the libellant became the holder and owner thereof, and the owner of said merchandise, and was the owner and holder at the time of the subsequent delivery of the merchandise at New York; that the said Therapia carried said merchandise from Smyrna to Genoa, and there delivered the same to the respondent and to said steamship Königin Luise for transportation to New York, where she delivered it to the libellant and where the libellant paid the freight and charges before delivery, believing that the merchandise had arrived in good order and condition, but after the delivery, the merchandise was found to be seriously damaged and the libellant alleges that said damage was caused by bad stowage

and by negligence, carelessness, improper conduct and want of attention of the master, mariners and servants in the employment of the respondent and of the Königin Luise, a large number of the barrels being broken, crushed and otherwise injured and the contents thereof in whole or in part spilled and lost, whereby the damage mentioned above was sustained by the libellant.

The defending parties admit the shipment as alleged in the libel, but claim that the oil was received for carriage in accordance with a bill of lading which had stamped on its face: "Not accountable for leakage or breakage"—also that the barrels were of inferior character and old and weak, also claiming the defence of the perils of the sea as covering the condition of the barrels and ordinary working of cargo.

The bill of lading contained a clause stipulating that the ship owner should not be responsible for leakage or breakage and the claimant and defendant rely upon that provision for their defence, claiming that as no proof has been given to show any negligence on their part, no liability has been established.

The testimony shows that the barrels were the usual class of packages in which oil transported for commercial purposes is shipped. Upon arrival here, it was found that about 26 of the barrels were empty, 29 showed a large percentage of loss, and with a few exceptions, all of the others showed a certain amount of loss. There is always some loss in the transportation of oil, estimated at from $1\frac{1}{2}$ to $5\frac{1}{4}$ or $5\frac{1}{2}$ per cent, but that is entirely insufficient to explain the loss in this case. Here the empty barrels showed broken staves, broken heads, hoops missing, and similar damage. Many of the barrels were squeezed out of shape. All had evidently suffered from some external damaging cause without, however, disturbing their positions in the tiers.

The libellant contends that being a purchaser for value, relying upon the clean bill of lading given by the respondent, it is entitled to recover, and cites: Compania Naviera Vascongada v. Churchill, 10 Asp. Mar. Law Cas. 177. I had occasion to consider that case in New York M. & S. Co. v. Hamburg Am. P. A. Gesellschaft (D. C.) 171 Fed. 577, and adopted its doctrine of estoppel to sustain a claim made by the indorsee of a bill of lading against a carrier for damage caused to goods receipted for "in good order and condition," being delivered in a damaged condition.

The respondent on the other hand relies upon the doctrine contained in the recent case of The St. Quentin, 162 Fed. 883, 89 C. C. A. 573, restated in The Baralong (C. C. A.) 172 Fed. 220.

These last mentioned cases, in a general way are in accordance with the authorities, requiring the shipper of goods, damaged in transit, to prove negligence, when the damage is covered by an exception. In the cases cited by libellant the bills of lading, reciting that the goods were received in good order and condition, were incorrect and known to be so by the carrier when they were issued. If the merchandise was not in good order when shipped, it could not be delivered in that condition at the end of the voyage and it was held that the carrier was estopped from denying that the merchandise was in the condition described in the bill of lading and it must respond

for the damages. These were quite different from cases where the merchandise was in the condition described in the bill of lading when shipped and was subsequently damaged, during the course of the voyage. I think there can be no doubt that such was the situation here. The libellant does not contend that the bill of lading was false when issued but, on the contrary, that it correctly showed the condition of the goods and the damage was the result of something happening afterwards. It is said in libellant's brief:

"The testimony taken under the commission to Smyrna shows beyond question that the goods were in perfect order when shipped, and must have been subsequently mishandled or neglected to reach New York in the badly damaged condition they showed upon arrival."

Therefore, the cited cases must be regarded as not in point.

It is further contended by the libellant, however, that the exception does not cover the situation. It reads:

"The owner is not responsible for * * * leakage, breakage, land damage, or any other injury resulting from the natural condition of the goods shipped, or their deficiency of packing not externally recognizable. * * *"

If the exception were leakage and breakage only, it might be that the burden of further proof in the matter, if required, would be upon the libellant, but when such words of exception are qualified as stated above, it becames questionable if such be the case. For example in Doherr v. Houston (D. C.) 123 Fed. 334, affirmed 128 Fed. 594, 64 C. C. A. 102, the exception was " * * * that the carrier should not be liable for any loss or damage occasioned by * * * breakage * * * nor for any loss or damage arising from the nature of the goods or the insufficiency of the packages. * * *" It was held there that the burden was upon the carrier to explain and in the absence of explanation, it was liable.

It is contended by the libellant that broken heads, staves, chimes, etc., did not result from the "natural condition of the goods shipped," nor could the damages be due to deficiency of packing "not externally recognizable." It appears here that the barrels had been tested, were absolutely tight and in perfect ordinary condition, so far as the eye could determine, when they went aboard at Smyrna. They were found in New York, while still in the tier where they had been stowed, in a broken condition, similar to those in Doherr v. Houston, supra, where it was held that the carrier was liable, in the absence of explanation of the cause. In Doherr v. Houston, stowage was in question and while there is nothing here as there to indicate the cause of the breakage, still the principle seems to be the same and when the facts appear, as they do here, to indicate some negligence must have existed after the shipment and before delivery, I do not think a libellant can be thrown out of court simply because he has not gone into the enemy's camp for testimony.

In The Folmina, 212 U. S. 354, 363, 29 Sup. Ct. 363, 365, 53 L. Ed. 546, where damage was found to exist in the cargo of an apparently sea worthy ship, through the unexplained admission of sea water, it was held that the burden of proving the cause of the entrance was upon the carrier. The court, by Mr. Justice White, said in part:

"As the burden of showing that the damage arose from one of the excepted clauses was upon the carrier, and the evidence, though establishing the damage, left its efficient cause wholly unascertained, it follows that the doubt as to the cause of the entrance of the sea water must be resolved against the carrier, The Edwin I. Morrison, 153 U. S. 199, 212, 14 Sup. Ct. 823, 38 L. Ed. 688. And see further the following cases, applying the principle just stated, and holding that because the damage to cargo was shown to have been occasioned by sea water without any satisfactory proof as to the cause of its presence, in view of the burden resting upon the carrier, conjecture would not be permitted to take the place of proof. * * *"

This does not seem to have been a case of insufficiency of packages as in The Claverburn (D. C.) 147 Fed. 850, but of breakage of good packages through some improper handling. Mere leakage of the oil would not account for the delivered condition of the barrels and the ship should furnish some explanation of it. In the case just cited, there was testimony to show that the drying quality of the wood oil in the barrels was sufficient to account for the damage, but that it is not so here and to conclude that the nature of this oil was such as to have caused the loss, would, it seems to me, be erroneous.

In the argument here, conjecture has been given a wide scope, but excluding it altogether from consideration, I think the decision may be safely rested upon an entire absence of explanation of the cause of damage from the carrier, which was much more within its knowledge than it was within the shipper's.

The claim for advanced freight is resisted by the carrier under the following provision of the bill of lading, viz:

"XI. Full freight must be paid for goods damaged or diminished through leakage. For liquids, freight must also be paid as for full barrels, whether the same be full, partly full or empty. No freight is to be paid for increase in weight caused by sea damage."

This provision excludes any recovery for freight paid in advance on goods damaged or diminished through "leakage." The word is not qualified as it is in the earlier part of the instrument and the question is shall the carrier be entitled to retain freight paid in advance where it has been held, as here, that the carrier is responsible for the damages to the merchandise. This loss was not through leakage in the ordinary sense, and such part of the amount as was paid as freight on the goods which were not delivered, can be recovered back.

There will be a decree for the libellant, with an order of reference.