## THE SOYO MARU.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1910.)

No. 1,817.

SHIPPING (§ 123*)—LIABILITY OF VESSEL FOR DAMAGE TO CARGO—NEGLIGENT STOWAGE.

A steamship *held* liable for damage to a cargo of olives shipped in casks, on the ground of negligent stowage, on evidence showing that cargo of such weight was stowed on top of the casks as to flatten the staves of some, causing the brine to leak out, and consequent damage to the olives.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 454, 455, 466; Dec. Dig. § 123.*]

Appeal from the District Court of the United States for the Northern District of California.

Suit in admiralty by E. Dubedat and A. Ratye, partners, as Pascal Dubedat & Co., against the steamship Soyo Maru, of which Toyo

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Kisen Kaisha, a corporation, is claimant. Decree for libelants, and claimant appeals. Affirmed.

Page, McCutchen & Knight and Samuel Knight, for appellant.
Louis T. Hengstler, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The libel brought in the court below by the appellees was for the recovery of damages alleged to have been sustained by them by the negligent stowing and transporting of a consignment of 88 casks of olives from Antwerp, Belgium, to San Francisco, 8 barrels of which were alleged to have been delivered to the appellees by the appellant in a greatly damaged condition. The court below found the facts to be as alleged in the libel, and accordingly entered a decree for damages.

The sole point made on the appeal is that the evidence is insufficient to warrant the findings. The case shows that the olives were shipped at the port of Sevilla, Spain, on the ship Lister, to be transshipped at Antwerp on board the Japanese steamship Soyo Maru. At Antwerp they were received on board the Soyo Maru, and stowed under the direction of a marine surveyor named Baines, who was a witness in the cause, and who testified, among other things, that when the olives were received by the appellant they were in good condition, and, in his opinion, fit for shipment. The witnesses are not agreed as to whether the olives were stowed in one, two, or three tiers; but it is undisputed that upon the casks of olives were placed eight tiers of champagne in cases, in mixed pints and quarters, above which were stowed cases of matches, four tiers high, with some straw covers for bottles, and, according to one of the witnesses, some vermouth. In his deposition Baines says:

"Five casks of olives in brine, marked 'PDC,' were stowed in No. 3 port side. Eighty-three casks were stowed in No. 3 starboard side. Bleaching powder in casks was also in No. 3 starboard hold. On part of floor about three tiers high of casks were placed (the remaining five, being too many to fill tier, were placed in No. 3 port), making 10 to 12 feet high from floor. Casks of sheet zinc were also stowed in this hold, which being leaner, some were put where olive casks would not go. Plenty wood was used, and suitable battens used between tiers, and spaces filled with chockwood. Over casks and chockwood and battens, cases spirits, wines, miscellaneous goods, and matches in cases were placed up to the beams. Planks and plates of iron were used as temporary platforms over beams in 'tween-deck space."

The pregnant fact is that the superincumbent weight was too great for all of the casks of olives to withstand it; for the undisputed fact is that eight of those casks had some of their staves flattened, thereby loosening them from the heads, resulting in the loss of the brine, and the consequent damage to the olives sued for.

We think the evidence sufficient to sustain the findings, and the judgment is accordingly affirmed.