GULDEN et al. v. HIJOS DE JOSE TAYA S. EN C.

(District Court, E. D. New York. July 30, 1917.)

1. SHIPPING ⬤⟿141(2)—LIABILITY FOR DAMAGE TO CARGO—IMPROPER STOW-
AGE.

Under Harter Act Feb. 13, 1893, c. 105, § 2, 27 Stat. 445 (Comp. St.
1916, § 8030), a ship cannot relieve itself from liability for damage to
cargo caused by improper stowage.

2. SHIPPING ⬤⟿132(5)—LIABILITY FOR DAMAGE TO CARGO—BURDEN OF PROOF.

A carrier will not be held liable for damage to cargo within the excep-
tions of the bill of lading, unless the libelant. affirmatively shows negli-
gence which would preclude the setting up of such exceptions; but it is
sufficient if negligence is shown which was likely to cause the damage, and
no other cause is shown.

3. SHIPPING ⬤⟿123—LIABILITY FOR DAMAGE TO CARGO—IMPROPER STOWAGE.

A ship held liable for damage to casks of olives from the breaking and
leakage of the casks, on the ground that it was caused by improper
stowage.

In Admiralty. Suit by Frank Gulden and others against Hijos de
Jose Taya S. en C. Decree for libelants.

Francis Bertram Elgas, of New York City (George H. Gilman, of
New York City, of counsel), for libelants.

Kirlin, Woolsey & Hickox, of New York City (Robert S. Erskine,
of New York City, of counsel), for respondent.

CHATFIELD, District Judge. Libel has been filed to recover dam-
ages for part of a cargo of olives shipped on one of the respondent's
vessels from Spain to New York. On unloading, four hogsheads and
two barrels were found to be injured; that is, the staves crushed in,
so that the brine had leaked out and the contents had decayed or
spoiled. The cargo was transshipped from one vessel to another at
Cadiz, Spain, and, while the respondent owned both vessels, the proof
indicates that the damage occurred upon the steamer Asuarco, while on
a voyage from Cadiz to New York.

There is testimony that the dunnage was not stowed properly under
the ends of the barrels, so as to hold them bung up, and that many of
them were found shifted or turned over upon their arrival. The re-
spondent claims that such damage was within the exemption from
liability contained in the bill of lading. The bill of lading stated that
the goods were received in apparent good order and condition, but
that the carrier would not be responsible for the contents of the pack-
ages or their value.

[1, 2] The Harter Act applied to this ship (The Chattahooche, 173
U. S. 540, 19 Sup. Ct. 491, 43 L. Ed. 801), but will not relieve the
vessel for bad stowage (The Palmas, 108 Fed. 87, 47 C. C. A. 220).
Under a bill of lading like that in this case, the carrier, who has re-
ceived the goods in apparent good order, will not be held responsible,
unless the libelant shows affirmatively that the ship was guilty of neg-
ligence which would preclude setting up the exceptions of the bill of
lading. The San Guglielmo (D. C.) 241 Fed. 969; The Konigin Luise,

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

185 Fed. 478, 107 C. C. A. 578; The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748. In the present case the bill of lading included also a provision excepting the vessel from responsibility for leakage, breakage, or any other cause of damage, even through the fault of the stowage.

While but five packages were so damaged that their contents were destroyed, there is testimony that many of the casks had been improperly placed or had rolled over during the voyage through lack of care in the method of stowing and the distribution of the dunnage. In The Konigin Luise, supra, there was no proof of bad stowage, and the case turned upon the possibility of damage by pressure after extensive leaking, where no proof of good condition on delivery to the vessel was given, to overcome the testimony that the barrels were old and patched.

To always excuse the ship because the loss is fortunately small, and to hold that no carelessness is proven, unless some one has seen a deliberate violation of the ordinary rules of loading, is practically to relieve the ship in every instance and to make the exception in the bill of lading a perfect insurance against responsibility. It is much easier for the ship to show the actual conditions, and to throw upon the shipper the presumption that the goods were not delivered in good order, than for the consignee to find out what has occurred during the loading and on shipboard.

[3] In the case at bar the evidence shows such stowage that leakage was likely, and of itself might cause the conditions resulting in damage like that caused by the working of the vessel in The Konigin Luise, supra. But the bad stowage in this case would be the proximate cause. The vessel met rough weather, but this was to be expected, and presents only the question under the Harter Act as above discussed.

Libelant may have a decree.