## THE ORION. E. TOLIBIA & CO., Inc., et al. v. OCEAN TRANSP. CORPORATION. E. F. DREW & CO., Inc., v. SAME.

(Circuit Court of Appeals, Second Circuit. May 7, 1923.)

No. 253.

1. **Shipping ☞132(5)—Evidence held to show improper stowage of cargo of olives.**

Evidence *held* sufficient to warrant a finding of improper stowage, where casks and barrels of olives were stowed in such manner that the weight of the cargo thereafter loaded was such as to break the staves of some of the casks and loosen the hoops of some of the barrels, causing consequent damage to the shipment.

2. **Shipping ☞123—Improper stowage renders vessel liable.**

The stowage of barrels of olives by piling them bilge and bilge, when they should have been turned bilge and cantline, is improper, and imposes liability where injury results therefrom.

3. **Shipping ☞132(3)—Evidence held insufficient to show improper stowage.**

A vessel *held* not liable for improper stowage of sulphur oil, where the evidence showed such cargo to have been stowed in old barrels, which commenced to leak as soon as stowed; the libelant not having met the burden of proof.

Appeal from the District Court of the United States for the Southern District of New York.

Libels in admiralty by E. Tolibia & Co., Inc., and others, and by E. F. Drew & Co., Inc., against the steamship Orion, her engines, boilers, etc.; the Ocean Transportation Corporation, claimant. From a decree for libelants, E. Tolibia & Co., Inc., and others, claimant appeals. From a decree for the claimant, libelant E. F. Drew & Co., Inc., appeals. Decrees affirmed.

Bigham, Englar & Jones, of New York City (Oscar R. Houston and William H. Woolley, both of New York City, of counsel), for libelants.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for claimant.

Before ROGERS, MANTON and MAYER, Circuit Judges.

MANTON, Circuit Judge. These cases were argued together and will be considered in one opinion. Ten libels were originally filed herein, some against the steamship Orion and others against the Ocean Transportation Corporation in personam. The various libels were consolidated by two orders in the court below. The respective libelants, other than E. F. Drew & Co., Inc., claim damages for loss to various consignments of olives and stuffed olives transported by the steamship Orion from Seville, Spain, to New York. The libelant E. F. Drew & Co., Inc., claims damages for loss of sulphur olive oil cargo.

The voyage started June 16, 1916, from Seville, Spain, and ended at New York, July 1, 1916. The Orion was a freighter of 5,200 tons. She had a trunk running forward from the bridge deck to the forecastle and aft to the poop deck. She was built to carry a general cargo. She had four holds, 1 and 2 being separated by an iron bulkhead,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and there was a wooden bulkhead between No. 2 and the spare bunker. She had no 'tween decks proper. The olives were carried in large 600-pound containers or casks, and smaller barrels of about 48-gallon capacity. The sulphur olive oil was carried in barrels. The voyage over was uneventful and a very calm sea prevailed. The barrel cargo was distributed through all four holds; the olives in Nos. 1, 2, and 3 holds and the oil in No. 4. About 300 barrels of olives were stowed on deck. At the bottom of the three holds were stowed three tiers of casks, then there was a flooring, and then the small barrels of olives, and on top cork and licorice root. The sulphur oil barrels were stowed seven tiers high in No. 4 hold. When the discharge was made, many of the barrels were found crushed and leaking; the bottom tiers being in particularly bad condition. It is claimed that improper stowage brought about this damage. The vessel contends that the damage was due to the use of defective casks.

The libelants assume the burden of establishing bad stowage because of exemption from liability due to leakage and breakage, as provided in a clause in the bills of lading. No notation was made on the bills of lading of the casks having been received in damaged condition. The master said that, when bills were issued where the goods were received in damaged condition, some notice thereof was usually written on the bills of lading. The olives were in chestnut casks, and it is abundantly established that chestnut casks were the proper kind of casks to be used in transporting olives. Oak containers, it is said, would render the olives unfit as food. The casks and barrels were fastened with eight iron hoops. There is testimony sufficient to establish that the barrels, at the time of shipment in Spain, were the type usually used for this character of merchandise. They were all new and in good condition—making their first trip. Witnesses who made personal inspection gave such testimony. Lloyd's agent personally examined the cargo when loaded, and he says there was bad stowage; the casks of olives were piled too high in the hold, pressure on the lower tiers was excessive, and proper dunnage was not used, and that the weight was not evenly distributed. He refused to insure part of the cargo.

[1] A representative of one of the cargo owners testified that he was in Spain and bought the olives for his firm, and he saw the casks in Spain, and then again when unloaded in New York. He says they were the usual casks in which shipments were made, and they were in good condition when shipped, and he gave testimony of their damaged condition when received. The staves of the barrels were crushed and broken and hoops were off many of the barrels. There is no evidence to support a claim that the cargo shifted. On the other hand, there was ample evidence to support the claim of improper stowage. The vessel was an unusually deep one, and was designed for the carriage of bulk cargo in grain. In holds Nos. 1, 2, and 3, there were first laid three tiers of casks lying on their bilges, with the axes of the barrels fore and aft. The diameter of the cases at the bilge varied from 3 feet 4 inches to 3 feet 6 inches. On top of the tiers, a platform was built.

We accept the testimony of the master, crew, and stevedores in this port, who say that the platform was resting, not on the 'tween decks, but on the third tier of casks, and was laid by placing beams athwart ships on the chimes of the third tier of casks, and then laying planks lengthwise of the ship on these crosspieces. On the platform were stowed the smaller barrels, and above the barrels cork was stowed up to the main deck and in the trunk. Protest was made at Seville by an agent of the cargo owner at this kind of stowage. By this manner of stowage, the entire weight of the cargo in Nos. 1, 2, and 3 holds rested upon the bottom of the tier of casks. Such weight was declared by expert testimony to be excessive, and the stowage therefore improper. Such stowage has been decided to be improper because of the excessive weight on the lower tiers, and where casks were found with their staves flattened and heads loose, liability for the damage has been imposed. Soyo Maru, 178 Fed. 921, 102 C. C. A. 428. The photographs offered in evidence fully justify the claims of broken and damaged barrels.

[2] It was also established that barrels were piled bilge and bilge, and should have been turned bilge and cantline. This court has held that such stowage caused unnecessary pressure and imposed liability where it was practiced. The Arpillao, 270 Fed. 426. Fault is charged for using licorice root for dunnage, instead of cordwood; but we need not now consider that question, for there is ample proof of other faults of stowage, which makes the vessel liable for damage caused to the olives and casks stowed in Nos. 1, 2, and 3 holds.

[3] The cargo of the appellant E. F. Drew & Company, Inc., was sulphur oil. This is the last pressing of the olives and is inedible. It is a cheap product, used for making soap. It is usually carried in old barrels. It is said there is usually a leakage of this product when carried in this kind of barrels. The testimony is that this commenced to leak from the barrels as soon as it was stowed on the Orion in Seville. The captain said it was necessary to pump oil from the bilges of the ship almost every day while she was at Seville. There is confirmation of this testimony. When these oil barrels were discharged in New York, there was found to be about a foot and a half of oil on the floor of the hold. We are satisfied that the barrels used here were old and of insufficient strength. The sulphur oil dried and weakened the staves of the barrels, and the hoops were caused to slacken, open up, and the liquid leak out. We think this appellant has failed to meet the burden assumed by it to prove that there was improper stowage which caused this loss.

Decrees affirmed.