## THE BREEDIJK.

District Court, D. Maryland. November 2, 1927.

No. 1375.

1. Admiralty ⟨key⟩34—As respects laches, admiralty courts are bound only by their own discretion which may be governed by local limitation period.

As respects laches, courts of admiralty are bound only by their own discretion, though that discretion may be governed by the period of limitations in force in the local jurisdiction.

2. Shipping ⟨key⟩132(1)—That libel for cargo loss was not filed until two years and four months after arrival of vessel held not to justify dismissal of libel.

That libel in rem for loss of part of cargo, due to improper stowage and handling, was not filed until about two years and four months after arrival of vessel, held not to justify dismissal of libel; local limitation period not having elapsed.

3. Shipping ⟨key⟩138—Under statute vessel is not relieved of liability for damages to shipment caused by improper stowage or handling (Harter Act [46 USCA § 190 et seq.]).

Under Harter Act (46 USCA § 190 et seq. [Comp. St. §§ 8029–8035]), vessel is not re-

lieved of liability for damages to shipment caused by improper stowage or handling.

4. Shipping ⟨key⟩141(1)—Libelant must show negligence of ship, precluding setting up exceptions in bill of lading.

Vessel is not to be held responsible for damages to cargo, unless libelant can show affirmatively that vessel was guilty of negligence which would preclude setting up the exceptions in the bill of lading.

In Admiralty. Libel in rem by J. D. Peake against the steamship Breedijk. Libel dismissed.

Fendall Marbury, of Baltimore, Md., for libelant.

Keech, Deming & Carman, of Baltimore, Md., for respondent.

COLEMAN, District Judge. This is a libel in rem for loss of cargo, claimed to be due to improper stowage and handling. On April 20, 1923, the libelant's assignor shipped 1,150 barrels of refined sesame oil in the steamship Breedijk at Rotterdam, Holland, consigned to Baltimore. The bill of lading contained the following exceptions:

"The act of God, enemies, pirates, robbers, thieves, vermin, barratry of master and mariners, restraints of princes and rulers or people, sweating, insufficiency of package in size, strength or otherwise, drainage, *leakage, breakage,* pilferage, *wastage,* rain, spray, rust, frost, decay, contact with or smell or evaporation from any other goods, inaccuracies, obliteration, insufficiency or absence of marks, numbers, addresses or description of goods shipped, injury and wrappers however caused, lighterages to or from the vessel, transshipment, jettison, explosion, heat. * * * *"

The oil was contained in secondhand wooden barrels, with metal hoops, which the port officers at Rotterdam testified, by deposition, were in the usual condition of such secondhand barrels. It further appears that it was common practice to use barrels of this kind; metal drums having been used to some extent, but for the most part abandoned, because of the greater expense, which was not sufficiently offset by the saving due to the decrease in leakage. In the present case the barrels were stowed in the lower midship and aft holds of the vessel in six tiers, about 200 barrels to the tier, "bilge and cantline, bilge free"; it being admitted that this was the normal and proper method of stowage of this kind of cargo. There is no evidence that the cargo was subjected to unreasonable heat, or that any unusual weather conditions were encountered on the voyage. Nor did the

somewhat protracted length of the voyage have any material effect on the condition of the oil. Upon arrival in Baltimore, May 18, 1923, 17 barrels were found to be empty, 15 partly empty, and about 86 leaking. One barrel was broken. The average leakage per barrel was about 13 pounds; that is, the percentage of loss was slightly over 3 per cent. of the entire amount of oil in the shipment. The total claim amounts to $2,121.48, which includes the cost of recooperage of the barrels. There is no claim of unseaworthiness of the vessel—the basis of libelant's contention being (a) improper stowage; and (b) improper handling.

[1, 2] The libel was filed on September 28, 1925, approximately two years and four months after the arrival of the vessel at Baltimore. But this does not justify dismissal of the libel. On the question of laches, courts of admiralty are bound only by their own discretion, though that discretion may be governed by the period of limitations in force in the local jurisdiction. Such has not elapsed here. The Key City, 14 Wall. 653, 20 L. Ed. 896; The Southwark (D. C.) 128 F. 149.

[3, 4] The only question, therefore, to be decided, is whether the leakage is covered by the exceptions in the bill of lading, or whether it was caused by improper stowage or handling, in either of which latter events it is conceded that the exceptions do not apply, because the Harter Act (27 Stat. 445 [46 USCA § 190 et seq.; Comp. St. §§ 8029–8035]) does not relieve a vessel of liability in such a case. The Palmas (C. C. A.) 108 F. 87; Culden v. Hijos de Jose Taija (D. C.) 243 F. 780; Knott v. Botany Mills, 179 U. S. 69, 21 S. Ct. 30, 45 L. Ed. 90. The evidence does not sustain the claim that the stowage was improper. The "bilge and cantline, bilge free," method was conceded to be proper and such evidence as there is in the case, to the effect that another type of stowage was used, at least as to part of the cargo, and that a number of the barrels were damaged, due to improper handling, is refuted by the weight of the testimony. The amount of actual breakage is virtually negligible. The vessel is not to be held responsible unless the libelant can show affirmatively that the ship was guilty of negligence which would preclude setting up the exceptions in the bill of lading. The Henry B. Hyde (C. C. A.) 90 F. 114; The Claverburn (D. C.) 147 F. 850; The Thomas P. Beal (C. C. A.) 11 F.(2d) 49, 1926 A. M. C. 438; Gulden v. Hijos de Jose Taija, supra. There is uncontradicted testimony in the case that a loss as great as 10 per cent. is not unusual in shipments of oil of this grade.

In the light of all of the evidence, the court finds that the direct cause of the leakage was the age and insufficient strength of the barrels. If the shipper elected to use barrels of this type, rather than more expensive containers, he assumed the risk of loss naturally resulting therefrom. The facts appear to be quite similar to those in The Orion (C. C. A.) 290 F. 379, except that there the leakage was evidently considerably in excess of that in the present case. Nevertheless the court held that the provisions of the bill of lading should apply, saying (page 381):

"The cargo of the appellant E. F. Drew & Co., Inc., was sulphur oil. This is the last pressing of the olives and is inedible. It is a cheap product, used for making soap. It is usually carried in old barrels. It is said there is usually a leakage of this product when carried in this kind of barrels. The testimony is that this commenced to leak from the barrels as soon as it was stowed on the Orion in Seville. The captain said it was necessary to pump oil from the bilges of the ship almost every day while she was at Seville. There is confirmation of this testimony. When these oil barrels were discharged in New York, there was found to be about a foot and a half of oil on the floor of the hold. We are satisfied that the barrels used here were old and of insufficient strength. The sulphur oil dried and weakened the staves of the barrels, and the hoops were caused to slacken, open up, and the liquid leak out. We think this appellant has failed to meet the burden assumed by it to prove that there was improper stowage which caused this loss."

In conclusion, the libelant has not proved that he is entitled to recover. He has merely shown loss by leakage. The vessel has answered, with the exceptions in the bill of lading, and libelant has not sustained the burden then imposed upon him to prove negligence on the part of the vessel.

The libel must therefore be dismissed.