**THE CALIFORNIA.**

No. 117 of 1941.

District Court, E. D. Pennsylvania.

April 5, 1946.

Mortimer W. H. Cox and Peter P. Zion, both of Philadelphia, Pa., for petitioner.

Krusen, Evans & Shaw, by Thomas E. Byrne, Jr., all of Philadelphia, Pa., for respondent.

WELSH, District Judge.

This is a libel in rem filed by the Globe Solvents Company against the Steamship California for damage to cargo, which was in transit on said vessel, claimed to be due to the negligence of the respondent. Trial was had before the Court without a jury.

### Discussion

The law imposes upon carriers the duty to carefully handle and stow cargo and to care for and properly deliver same. The Willfaro, D.C., 9 F.2d 940. The evidence discloses that to protect the cargo of Libellant the respondent furnished one inch

of open dunnage and two inches of closed dunnage. This three inches of dunnage, we think, was inadequate under the circumstances of the case and therefore the ship violated its legal duty to properly handle and care for the cargo entrusted to it. The Master and Chief Mate of the S. S. California had knowledge that the vessel was deep loaded and that it would not take much of a sea to go over and get water on deck to a depth of 2-7 inches. The three inches of dunnage provided by the carrier would have been sufficient to protect the cargo from the dampness of the deck but it was obviously insufficient and inadequate to protect the cargo from the expected and frequent 2-7 inches sea washings. Had the respondent used a reasonable degree of care it would have supplied dunnage of at least 8-10 inches in height. It failed to do so and we deem this failure a violation of the duty to carefully handle and care for the cargo.

In The Edith, 2 Cir., 10 F.2d 684, the Court said that failure to provide dunnage where it is reasonably necessary is a fault in stowage, for which failure the carrier is liable. We think that The Edith, supra, in this respect is controlling in the instant case. No dunnage was furnished in The Edith and inadequate dunnage was provided in the case at bar. However, the distinction is not of the essence and the failure to provide adequate dunnage under the circumstances is a fault in stowage, for which the ship must be held liable for the resulting damage to the cargo.

The argument that the stamped notation on the Bill of Lading which reads "loaded on deck owners risk of damage or loss" relieves the respondent is untenable. It is not found as a fact that the stamped notation on the Bill of Lading gave the carrier the authority to load the cargo of lacquer solvent on deck (but it will be seen later than an Act of Congress imposed on the carrier the duty to stow the cargo on deck) for the libellant paid full freight charges for the shipment and did not learn that the cargo had been stowed on deck until the S. S. California was out at sea. But for the purposes of this argument it will be admitted that the respondent was authorized to stow the cargo on deck. If we are to accept the argument of the respondent we would be forced to conclude that the respondent had discharged its duty to exercise due care to handle and care for the cargo entrusted to it when it loaded the cargo on deck. With this conclusion we are not in agreement for the reason that as has been stated previously the negligence consists of the failure of the carrier to provide adequate dunnage under the circumstances of the case and it does not consist of the stowing or loading of the cargo on deck. Furthermore, even the most favorable construction (from the respondent's standpoint) of the stamped notation on the Bill of Lading cannot avail the respondent for it is a basic maritime law that a ship cannot exempt itself from liability for loss or damage arising out of negligence. A stipulation that undertakes to exempt the ship from loss or damage arising from its negligence is void as against public policy. The Skipsea, 2 Cir., 9 F.2d 887; The Breedijk, D.C., 22 F.2d 328, 329; Export S. S. Corporation et al. v. American Ins. Co., Newark, N. J. et al., D.C., 26 F.Supp. 79. The Harter Act, 46 U.S.C.A. §§ 190–195, recognized the foregoing and incorporated it within its provisions. Section 190 of that Act provides that "it shall not be lawful * * * to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby [the ship or its owners] shall be relieved from liability * * * arising from negligence * * * in proper loading, stowage, custody, care, or proper delivery of * * * merchandise * * *. Any and all words or clauses of such import * * * shall be null and void and of no effect."

A second point raised by the respondent is that the general custom of the trade is to load cargo such as is involved in this case on deck. Again this contention presupposes that the negligence charged consists of stowing the cargo on deck, whereas, it has already been stated the negligence consists of faulty or improper stowage due to a failure to furnish adequate dunnage. But aside from that fact, the rule with regard to general custom which has been supported generally by most of the authorities and which ap-

pears to be sound is that conformity to custom is not of itself the exercise of due care. 38 Am.Jur. Sec. 34. The question that still remains is whether or not reasonable prudence under the circumstances has been exercised. That question has been answered in the negative.

■ It was also argued that the carrier complied with an Act of Congress, and regulations issued by the Department of Commerce pursuant thereto, by stowing the cargo on deck and, further, that it would amount to a penalty for adherence to the law if the Court were to construe compliance with said Act and regulations as constituting negligence. The answer to this argument is that the placing of cargo on deck was not the negligent act, but the failure to provide proper and adequate dunnage for the stowing of cargo was. We are satisfied that the respondent is not attempting to urge upon us that the compliance with the regulations by stowing the cargo on deck and the duty to exercise due care in furnishing adequate dunnage are mutually exclusive acts, that is, that the performance of one act precludes the possibility of the other. We can perceive no difficulty or hardship in the performance by the respondent of both acts.

■ The testimony reveals that the S. S. California experienced a few days of bad weather only but it did not encounter any storm of such violence as to constitute a peril of the sea. Peril of the sea means something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety. The Rosalia, 2 Cir., 264 F. 285. Perils of the sea refer to violent action of the elements not reasonably to be expected as distinguished from the natural influences of the sea. Morris v. Lamport & Holt, D.C., 54 F.2d 925. We conclude that peril of the sea exception was not proved.

The cases cited by libellant, Herman et al. v. Compagnie Generale Transatlantique, 2 Cir., 242 F. 859; The Folmina, 212 U.S. 354, 29 S.Ct. 363, 53 L.Ed. 546, 15 Ann.Cas. 748; The Vallescura, 293 U.S. 296, 55 S. Ct. 194, 79 L.Ed. 373; The Glenlochy, 226 F. 971, and Kaufer Co. v. Luckenbach S.

S. Co., Inc., D.C., 284 F. 160, which deal with "wettings by sea" and "cargo shipped in good order and damaged in transit," are not necessary for the disposition of the instant case. They are concerned primarily with presumptions, burden of proof and shifting of burden of proof where the proofs of the case rise no higher than the bald fact of "wetting by sea" or the mere fact that "goods were delivered to the carrier in good condition and received in damaged condition." But the proofs in the present case go further than either of these two facts because the libellant has proved negligence on the part of the respondent.

The damage and loss sustained by libellant solely by reason of the negligence of the respondent is in the amount of $1227.18. Judgment is hereby rendered in favor of libellant in the sum of $1227.18 with interest from the 16th day of January, 1941. Respondent is directed to pay the costs of this action.