## THE FOLMINA.[1]

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 84.　Argued January 21, 22, 1909.—Decided February 23, 1909.

When goods which were received in good order on board a vessel under a bill of lading agreeing to deliver them, at termination of the voyage, in like good order and condition are damaged on the voyage, the burden is on the carrier to show that the damage was occasioned by a peril for which he was not responsible. *Clark* v. *Barnwell*, 12 How. 272.

Merely proving that damage to cargo was by sea water does not establish that such damage was caused by peril of the sea within the exception of the bill of lading; in such a case conjecture cannot take the place of proof. *The G. R. Booth*, 171 U. S. 450.

Where a certified question does not propound a distinct issue of law,

---

[1] Docket title, No. 84, Jahn v. Steamship Folmina, Van Eyken, Claimant.

· but in effect calls for a decision of the whole case, this court need not, and in this case does not, answer it. *Chicago, B. & Q. R. R.* v. *Williams,* 205 U. S. 444.

The question "whether damage to the cargo of an apparently seaworthy ship, through the unexplained admission of sea water, in the absence of any proof of fault on the part of the officers or crew of the ship, is of itself a sea peril within the meaning of an exception in a bill of lading exempting the carrier from the act of God . . . loss or damage from . . . explosion, heat or fire on board . . . risk of craft or hulk or transshipment, and all and every the dangers and accidents of the seas, rivers and canals and of navigation of whatever nature and kind" answered in the negative.

The question "whether the ship is relieved from liability in consequence of said exception," not presenting a distinct issue of law, not answered.

THE facts are stated in the opinion.

*Mr. Frederick M. Brown* for Jahn *et al.*:

The questions submitted to this court for answer in this cause are favorably controlled by *The G. R. Booth,* 171 U. S. 450. The only differences between the facts in that case and the facts in the instant case are differences which make the owner of cargo on the Folmina more clearly entitled to redress than the owners of the cargo of the Booth. In the *Booth case* the carrier fully explained the entrance of the sea water; in the present case the carrier either cannot or will not explain how the sea water entered. In the *Booth case* the Circuit Court of Appeals certified as a fact that the steamer was actually seaworthy; in the present case it merely certified that there was an appearance of seaworthiness and that competent surveyors could not discover any defect. In the *Booth case* the facts certified by the Circuit Court of Appeals excluded the hypothesis of negligence on the part of the carrier or his crew; in the present case the Circuit Court of Appeals has only certified that the record contains no evidence showing negligence or fault on the part of the Folmina's crew.

No other point of difference between the two cases has been discovered.

It is just as certain in the case of the Folmina as in the case

of the Booth that there must have been an efficient agency or cause, permitting the sea water to enter. So long as that efficient cause remains undisclosed, the courts cannot know whether the damage comes within the scope of the sea peril exception or not. As it is the obligation of the carrier, upon fundamental principles, to bring the case within some contractual exception or statutory exemption from liability in order to exonerate himself, it follows that the Folmina must be liable, and the questions certified must be answered in the negative. See also *The Thrunscoe* (1897), Prob. 301.

Carriers should not escape liability for cargo damage without establishing clearly and satisfactorily the cause of damage and their right to exoneration. See *The Mohler*, 21 Wall. 230, 233; *Propeller Niagara* v. *Cordes*, 21 How. 7, 25; *The Caledonia*, 157 U. S. 124, 144; *Forward* v. *Pittard* (1785), 1 Durnford & East, 27; *The Edwin I. Morrison*, 153 U. S. 214; *The Mascot*, 48 Fed. Rep. 119; *S. C.*, 51 Fed. Rep. 605.

Once the carrier is able to show with the requisite degree of clearness that the damage is of an excepted character, the prevailing rule is that he need go no further to establish affirmatively that he was free from negligence in the premises; the shipper in this event having the burden of proving negligence. *Clark* v. *Barnwell*, 12 How. 272.

Nevertheless, there is a very respectable body of authority to the effect that even in this case it is contrary to public policy to impose upon the cargo owner a burden of proof which he is, from his inherent position, so ill adapted to bear. *Pittsburg &c. R. Co.* v. *Racer*, 5 Ind. App. 209; *Tardos* v. *Toulon*, 14 La. Ann. 429; *J. Russell Mfg. Co.* v. *New Haven Steamboat Co.*, 50 N. Y. 121; *Mitchell* v. *Carolina Cent. R. Co.*, 124 N. C. 236; *Pennsylvania R. Co.* v. *Miller*, 87 Pa. St. 395; *Johnstone* v. *Richmond &c. R. Co.*, 39 S. C. 55; *Alabama Gt. Southern R. Co.* v. *Little*, 71 Alabama, 611; *Central &c. Co.* v. *Hasselkus*, 91 Georgia, 382; *Adams Express Co.* v. *Stettaners*, 61 Illinois, 184; *Louisville &c. R. Co.* v. *Thompson*, 13 Ky. L. Rep. 973; *Mahon* v. *Steamer Olive Branch*, 18 La. Ann. 107; *Hinton* v. *Eastern R.*

Co., 72 Minnesota, 337; *Southern Express Co.* v. *Seide*, 67 Mississippi, 609; *Crow* v. *Chicago &c. R. Co.*, 57 Mo. App. 135; *Union Express Co.* v. *Graham*, 26 Ohio St. 595; *Turney* v. *Wilson*, 7 Yerg. (Tenn.) 339; *Brown* v. *Adams Express Co.*, 15 W. Va. 812; *Kirst* v. *Milwaukee &c. R. Co.*, 46 Wisconsin, 489; *Texas &c. R. Co.* v. *Richmond*, 94 Texas, 571.

Unexplained sea water damage to cargo is not of itself a sea peril, however seaworthy the vessel may appear. *The Reeside*, 2 Sumner, 567; *S. C.*, Fed. Cas. No. 11,657; *The Warren Adams*, 74 Fed. Rep. 413, 415; *Ins. Co.* v. *Easton & M. Transp. Co.*, 97 Fed. Rep. 653; *The Henry B. Hyde*, 90 Fed. Rep. 114, 116; *The Lennox*, 90 Fed. Rep. 308, 309; *The Patria*, 132 Fed. Rep. 971, 972; *The Svend*, 1 Fed. Rep. 54; *Bearse* v. *Ropes*, 1 Sprague, 331; *S. C.*, Fed. Cas. No. 1192; *The Zone*, 2 Sprague, 19; *S. C.*, Fed. Cas. No. 18,220; *The Queen*, 78 Fed. Rep. 155, 165, 168; affirmed 94 Fed. Rep. 180, 196; *The Centennial*, 7 Fed. Rep. 601; *The Lydian Monarch*, 23 Fed. Rep. 298; *The Compta*, 4 Sawyer, 375. To the same effect: *The Sloga*, 10 Ben. 315; *S. C.*, Fed. Cas. 12,955; *The Phœnicia*, 90 Fed. Rep. 116, 119; *S. C.*, 99 Fed. Rep. 1005; *Ins. Co.* v. *Easton & M. Transp. Co.*, 97 Fed. Rep. 653; *The Presque Isle*, 140 Fed. Rep. 202, 205.

The only inference properly drawn from the facts certified is that sea water entered the Folmina, not owing to any sea peril, but owing to the steamer's latent unseaworthiness or owing to some undiscovered internal mishap similar to that which occurred in the *Booth case* owing to some other cause for which the steamer is liable.

The carrier having the burden of explanation, the legal inference from failure to explain is that sea water found entrance to the hold of the Folmina owing to some cause for which the carrier is legally liable. *Nelson* v. *Woodruff*, 1 Black, 156, 160; *The Warren Adams*, 74 Fed. Rep. 413, 414.

*Mr. J. Parker Kirlin*, with whom *Mr. John M. Woolsey* and *Mr. Charles R. Hickox* were on the brief, for the Folmina:

The questions certified are predicated on the assumption

that the steamship was seaworthy and that the damage to the cargo occurred without the fault of the master, officers or crew. The language of the certificate is conclusive on the above point. See also *The Folmina*, 143 Fed. Rep. 636.

The damage to cargo found to have been caused by the entrance of sea water into a seaworthy ship, without the ship's fault, is "a loss by a danger or accident of the sea or of navigation," within the meaning of the exception, even though it cannot be determined, under the special circumstances, just how the water got in. *Montoya et al. v. London Assurance Co.* (1851), 6 Exch. 451; *S. C.*, 86 R. & R. 364; *Clark v. Barnwell*, 12 How. 272; *The Viscount*, 11 Fed. Rep. 169; *The Majestic*, 166 U. S. 375, 386; *Patrick v. Hallett*, 1 Johns. 241; *Starbuck v. The Phœnix Insurance Co.*, 62 N. Y. Supp. 264; *Potter v. Ins. Co.*, 2 Sumner, 197; *Bullard v. The Roger Williams Ins. Co.*, 1 Curtis, 148; *Hooper v. Rathbone*, Taney, 519. See also *Hibernia Insurance Co. v. St. Louis Transportation Co.*, 120 U. S. 166, and *The G. R. Booth*, 171 U. S. 450; *The Xantho*, 12 App. Cas. 503; *Hamilton v. Pandorff*, 16 Q. B. D. 633; *S. C.*, 12 App. Cas. 518; *Blackburn v. Liverpool, Brazil & River Plate St. Nav. Co.* (1902), 1 K. B. 290; *The Southgate* (1893), Prob. 329; *The Cressington* (1891), Prob. 152; *The Glendarroch* (1894), Prob. 226; *The Exe*, 57 Fed. Rep. 886; *The Castleventry*, 69 Fed. Rep. 475, note; *Davidson v. Bernand*, L. R. 4 C. P. 117, 122; *Thames & Mersey Marine Ins. Co. v. Hamilton*, 12 App. Cas. 492; *The Ontario*, 37 Fed. Rep. 220, 225.

The true intent and purpose of the rule which ordinarily requires the carrier to give an explanation of damage to cargo, is to require him to furnish such information as he may possess, with regard to it, in order that the court may be satisfied that the loss has not resulted from his negligence or from the unseaworthiness of the ship.

Where, as in this case, it is found that a cargo damage has been caused by the entrance of sea water into the ship, during the voyage, without the negligence of the ship's officers or crew, and that the ship was seaworthy for the voyage, a *prima facie*

case of a loss by "a danger or accident of the seas or of naviga-
tion" is made out, and the reason of the rule is satisfied, even
though in the special circumstances, neither the carrier nor the
most expert of surveyors could determine how the water got
in the ship.

In the absence of any allegation of unseaworthiness by the
shipper, or of any attempted proof of it, or of fault on the ship's
part, the loss should be considered to be within the exception.

MR. JUSTICE WHITE delivered the opinion of the court.

Upon the hearing of an appeal from a decree of the District
Court, Eastern District of New York, dismissing a libel, the
Circuit Court of Appeals for the Second Circuit certified to this
court for decision, pursuant to § 6 of the judiciary act of 1891,
the following questions:

1. Whether damage to the cargo of an apparently seaworthy
ship, through the unexplained admission of sea water, in the
absence of any proof of fault on the part of the officers or crew
of the ship, is of itself a sea peril within the meaning of an ex-
ception in a bill of lading exempting the carrier from "The act
of God . . . loss or damage from . . . . explosion,
heat, or fire on board . . . risk of craft or hulk or trans-
shipment, and all and every the dangers and accidents of the
seas, rivers and canals and of navigation of whatever nature or
kind."

2. Whether the ship is relieved from liability in consequence
of said exception?

The facts upon which the questions arose were thus stated in
the certificate:

The steamship Folmina sailed from Kobe, Japan, for New
York with a large shipment of rice on board in No. 3 hold, under
a bill of lading which contained the exception set out in the
first of the foregoing questions, and also a provision that the
ship "is not liable for sweat, rust, decay, vermin, rain or
spray."

The rice was in good order when put on board, but when discharged in New York a large part of it stowed on the starboard side of the hold was found damaged. The area of injury was downward from the first six tiers of bags to the bottom of the hold, which was dry, forward from about the after end of the hatchway nearly to the bulkhead, and inboard about three or four bags. The damage was caused by water and consequent heat.

A majority of the court are satisfied that the damage was caused by sea water and that it was not shown that the vessel encountered sufficient stress of weather to warrant the inference that it came in because of the action of external causes. There was no evidence tending to show any negligence, fault or error on the part of the ship's officers or crew; the cargo was well stowed and ventilated.

The Folmina was a steel steamship of the highest class in Lloyd's register. Before starting for Japan she was in dry dock at New York and was there surveyed by Lloyd's surveyor. Some time before she had been in dry dock at Cardiff, where some repairs were made to the rudder, rudder quadrant and a ventilator. The master testified to the general good condition of the steamer at the time she sailed from Kobe.

During and after the delivery of the cargo the main deck, the between deck, the pipes leading to or connected with No. 3 hold and the shell plating in the wing of No. 3 hold were carefully examined by the officers of the ship, by surveyors representing the libellants and their underwriters, and it was afterwards examined by competent and experienced surveyors representing both parties. The decks, hull, side plating and rivets of the ship were found to be sound, intact and free from leaks. No evidence (other than the mere circumstance that the damage was by sea water, if that be considered evidence) was found that there had been leaks in part of the frame, structure, side plating, riveting, pipes or appurtenances of the ship, through which water might have reached that part of No. 3 hold where the damage was done. No adequate means of access of sea

water were found, nor any defect in the steamer which then appeared to be seaworthy.

The answer to be given to the first question will be fixed by determining upon whom rests the burden of proof to show the cause of the damage, when goods which have been received by a carrier in good order are by him delivered in a damaged condition.

As said in *Liverpool & Great Western S. S. Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, 437:

"By the settled law, in the absence of some valid agreement to the contrary, the owner of a general ship, carrying goods for hire, whether employed in internal, in coasting, or in foreign commerce, is a common carrier, with the liability of an insurer against all losses, except only such two irresistible causes as the act of God and public enemies. Molloy, Bk. 2, c. 2, § 2; Bac. Abr. *Carrier*, A; *Barclay* v. *Cuculla y Gana*, 3 Doug. 389; 2 Kent, Com. 598, 599; Story on Bailments, § 501; *The Niagara*, 21 How. 7, 23; *The Lady Pike*, 21 Wall. 1, 14."

And as observed in the same case:

"Special contracts between the carrier and the customer, the terms of which are just and reasonable and not contrary to public policy, are upheld—such as those exempting the carrier from responsibility for losses happening from accident, or from dangers of navigation that no human skill or diligence can guard against. . . ."

It was long since settled in *Clark* v. *Barnwell*, 12 How. 272, that where goods are received in good order on board of a vessel under a bill of lading agreeing to deliver them, at the termination of the voyage, in like good order and condition, and the goods are damaged on the voyage, in a proceeding to recover for the breach of the contract of affreightment, after the amount of damage has been established, the burden lies upon the carrier to show that it was occasioned by one of the perils for which he was not responsible. But, as illustrated in the case of *The G. R. Booth*, 171 U. S. 450, proof merely of damage to cargo by sea water does not necessarily tend to establish that such dam-

age was caused by a peril or danger of the seas. In that case the facts were that the explosion of a case of detonators, which were part of a cargo, burst open the side of the ship below the water line, and, the sea water rapidly flowing in through the opening made by the explosion, injured the plaintiff's sugar. It was held that although the explosion and the inflow of the water were concurrent causes of the damage, yet "the explosion, and not the sea water, was the proximate cause of damage, and that this damage was not occasioned by the perils of the sea within the exceptions in the bill of lading." As well observed by counsel in the argument at bar, the efficient cause of the damage sustained by the rice on board the Folmina must be sought in those conditions or events which caused or permitted the entrance of sea water. It cannot in reason be said that sea water was the efficient, the proximate cause of the cargo damage, because no other cause for that damage has been disclosed. As there must have been an efficient cause permitting the sea water to enter, so long as that cause remains undisclosed it cannot be said that the damage has been shown to have resulted from causes within the scope of a sea peril. Of course, where goods are delivered in a damaged condition, plainly caused by breakage, rust or decay, their condition brings them within an exception exempting from that character of loss, as the very fact of the nature of the injury shows the damage to be *prima facie* within the exception, and hence the burden is upon the shipper to establish that the goods are removed from its operation because of the negligence of the carrier. But in a case like the one before us, where showing an injury by sea water does not in and of itself operate to bring the damage within the exception against dangers and accidents of the sea, it follows that it is the duty of the carrier to sustain the burden of proof by showing a connection between damage by the sea water and the exception against sea perils. For the distinction between the two see *The Henry B. Hyde*, 90 Fed. Rep. 114, 116; *The Lennox*, 90 Fed. Rep. 308, 309; *The Patria*, 132 Fed. Rep. 971, 972.

The inability of the court below to determine the cause of the entrance of the sea water would imply that the evidence did not disclose in any manner how the sea water came into the ship. In other words, while there was a certainty from the proof of a damage by sea water, there was a failure of the proof to determine whether the presence of the sea water in the ship was occasioned by an accident of the sea, by negligence, or by any other cause. Manifestly, however, the presence of the sea water must have resulted from some cause, and it would be mere conjecture to assume simply from the fact that damage was done by sea water that therefore it was occasioned by a peril of the sea. As the burden of showing that the damage arose from one of the excepted causes was upon the carrier, and the evidence, although establishing the damage, left its efficient cause wholly unascertained, it follows that the doubt as to the cause of the entrance of the sea water must be resolved against the carrier. *The Edwin I. Morrison*, 153 U. S. 199, 212. And see further the following cases, applying the principle just stated, and holding that because the damage to cargo was shown to have been occasioned by sea water without any satisfactory proof as to the cause of its presence, in view of the burden resting upon the carrier, conjecture would not be permitted to take the place of proof. *The Sloga*, 10 Ben. 315; *The Compta*, 4 Sawyer, 375; *Bearse* v. *Ropes*, 1 Sprague, 331; *The Zone*, 2 Sprague, 19; *The Svend*, 1 Fed. Rep. 54; *The Centennial*, 7 Fed. Rep. 601; *The Lydian Monarch*, 23 Fed. Rep. 298; *The Queen*, 78 Fed. Rep. 155, 165, 168; affirmed, 94 Fed. Rep. 180, 196; *The Phoenicia*, 90 Fed. Rep. 116, 119; *S. C.*, 99 Fed. Rep. 1005; *Ins. Co.* v. *Easton & M. Transp. Co.*, 97 Fed. Rep. 653; *The Presque Isle*, 140 Fed. Rep. 202, 205.

So far as the second question is concerned, it does not propound a distinct issue of law, but in effect calls for a decision of the whole case, and therefore need not be answered. *Chicago, B. & Q. Ry.* v. *Williams*, 205 U. S. 444, 452, and cases cited.

*The first question is answered No, and the second is not answered.*