## ALEXANDER ECCLES & CO. v. STRACHAN SHIPPING CO.

District Court, S. D. Georgia, E. D. January 9, 1924.

**1. Principal and agent ⬥146(2)—Party signing as "agent" must disclose his principal, or he will be personally bound.**

If one party to a contract describes himself as "agent," he is personally bound unless the contract makes it clear, or the other party knows, who is his principal, and that it is intended to bind the principal and not himself.

**2. Shipping ⬥104—Shipping company, signing as "agents" contract of carriage without disclosing principal, held bound as carrier.**

Shipping company, signing as "agents" contract for carriage of cargo of cotton to England, no principal being disclosed, *held* bound as carrier.

**3. Shipping ⬥132(2)—Libel for short delivery states cause of action without alleging respondent's negligence, or that it was common carrier, or that loss was within contract exceptions.**

A libel alleging that respondent contracted to carry a cargo of cotton to England, that a certain number of bales were delivered to its ship, and that a less number were delivered at destination, states a cause of action without alleging that respondent was a common carrier, or that it was negligent, or that failure to deliver the cotton did not come within the lawful exceptions of the contract.

**4. Shipping ⬥132(3)—Carrier must show that failure to deliver goods according to contract was occasioned by something for which it was not responsible.**

On proof by shipper of failure to deliver goods according to contract, burden is on respondent to show that such failure was occasioned by something for which it was not responsible.

In Admiralty. Suit by Alexander Eccles & Co. against the Strachan Shipping Company. On exceptions to libel. Overruled.

See, also, 21 F.(2d) 656.

Hartridge, Wright & Brennan, of Savannah, Ga., for libelant.

Adams & Adams, of Savannah, Ga., for libelee.

BARRETT, District Judge. Alexander Eccles & Co. brought their libel against Strachan Shipping Company, alleging that libelee contracted to transport 2,000 bales of cotton from Brunswick, Ga., to Manchester, England, that such cotton was delivered to libelee at Brunswick, and that 28 of such bales, valued at $6,062.18, were not delivered at Manchester. Copies of the original freight engagements and of the ocean bills of lading are annexed to the libel. The material portions of such are, respectively, as follows:

Freight Engagements.

"Brunswick Foreign Freight Contract.

"Strachan Line.

"Eng. No. 694.

"Brunswick, Ga., May 27th, 1919.

"Messrs. Alexander Eccles & Co., Savannah, Ga.—We beg to confirm freight engagement made with you today for two thousand (2,000) bales cotton, high density compression, minimum of 32 lbs. per cubic foot per steamship Shipping Board steamer (or substitute). Expected to arrive first half July ———, from Brunswick to Manchester, England at the rate of one dollar & twenty-five cents ($1.25) per 100 lbs. prepaid."

"6th. This contract is made subject to conditions of act of Congress governing bills of lading approved February 13th, 1893, and to terms and conditions of bills of lading in use by ocean carrier. * * *

"Proved damages to be the penalty for nonperformance of this contract by either party to this agreement.

"This contract is for freight room required only by shipper named herein, and no portion of it can be re-let or transferred without the written consent of Strachan Shipping Company. * * *

"[Signed]        Strachan Shipping Co., Agents,

By A. M. Ross.

"Accepted: Alexander Eccles & Co., "H."

Indorsements on Back of Contract.

"In consideration of the Strachan Line accepting the shipments covered by this contract without the production of license or other documentary evidence to show that their importation into Great Britain is not prohibited, shippers hereby agree to accept all responsibility," etc.

"This contract is made subject to conditions of act of Congress governing bills of lading, approved February 13, 1893, and to terms of bills of lading in use by steamers' agents * * * and is further conditioned upon the continuance of the steamship company's service and the sailing of its steamers * * * and (for war conditions or hostilities making it unsafe, etc.) the steamship company may, at its option, cancel this contract and shall be relieved thereafter from any liability hereunder except to return to the shippers" the cargo, etc.

Ocean Bill of Lading.

In upper left-hand corner, in large type: "Strachan Line. Strachan Shipping Co. Agents. Brunswick, Georgia."

At top of bill in large type: "Brunswick Custody Bill of Lading"—and then:

"Received from Alexander Eccles & Co. * * * to be transported by the steamship Kisnop or other steamer of the line from Brunswick, and bound for the port of Manchester * * * bales of cotton * * * order notify Alexander Eccles & Co., Manchester. * * *

"1. It is mutually agreed that, in the absence of fraud, clerical or obvious errors, this bill of lading, signed by the agents, shall be conclusive evidence against the shipowner of the quantity of cargo received as stated therein. * * *

"3. It is also mutually agreed, that the carrier shall not be liable for loss or damage occasioned by causes beyond his control; by the act of God; by the perils of the sea," etc.

"8. That in the event of claims for short delivery when the ship reaches her destination, the price shall be the market price at the port of destination on the last day of landing of the cargo, less all charges saved. * * *

"10. The shipment is subject to all the terms and provisions of the Act of Congress of the United States, approved February 13, 1893, entitled 'An act relating to the navigation of vessels,' etc., and of sections 4282 to 4287, each inclusive, of the United States Revised Statutes. * * * [Signed] By authority of the owners Strachan Shipping Co., Agents, W. Macpherson, Director."

Libelee excepted to the libel, as follows:

"(1) Because the allegations thereof do not disclose any cause of action, or any liability to the libelant by this respondent.

"(2) Because it appears that the contract sued on was made by this respondent as agent, and not as principal.

"(3) Because the libel does not state whether the contract was made by this respondent as principal or as agent.

"(4) Because it is not alleged that this respondent is proceeded against as a common carrier, or whether or not this respondent was a common carrier at the time that the contract is alleged to have been made, or at the time when it is alleged the cotton should have been delivered.

"(5) Because it is not alleged that it was through any fault of the respondent that the cotton was not delivered, or wherein the respondent was at fault in not delivering the cotton, and the facts and circumstances connected with the nondelivery are not alleged.

"(6) Because the conditions in the contract, particularly the ocean bills of lading mentioned in the fifth article of the libel and attached as exhibits to the libel, are not stated in the libel, and it is not alleged that the respondent became liable under its terms, whereby it appears that respondent could not, in any event, be liable for loss or damage occasioned by causes beyond its control, or by other perils and exceptions stated in the ocean bills of lading.

"(7) Because it is nowhere alleged in the libel that the nondelivery of the cotton was due to the violation of the written contracts sued on."

1. The contract was that the cotton should be transported from Brunswick, Ga., to Manchester, England, and there delivered. The bills of lading relieved the libelee from failure to deliver, if such failure were caused by certain facts or acts. Certain of such provisions were unquestionably lawful, though some contravened the inhibitions of section 1 of the Harter Act (February 13, 1893, c. 105; 27 Stat. at Large 445 [46 USCA § 190; Comp. St. § 8029]), if libelee was a common carrier or bound as such.

[1] 2. A contract cannot exist unless there be at least two parties thereto. If one of the parties describes himself as "agent," he must make it clear who is his principal and that it is his principal and not himself who is to be bound, or he will be bound, unless it was the habit of the agent to express himself that way, and the other party recognized that, and who was his principal. Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665; Code of Georgia 1910, § 3570; Candler v. De Give, 133 Ga. 486, 487, 66 S. E. 244; 2 C. J. p. 816.

[2] If Strachan Shipping Company is not the party obligating to transport the cotton, who was so obligated? Certain it is that no principal is specifically designated; but it is urged that the stipulation in the freight contract, "per steamship Shipping Board (or substitute)," taken with the fact that the Strachan Shipping Company signed as agents, made it clear that the Shipping Board was the principal. I cannot concur in this view. Would the contract have been departed from if under such substitution provision some other than a Shipping Board steamer had been employed? Surely "substitute," unqualified, must embrace any steamer, and especially when no particular steamer of the Shipping Board was designated. Thus written, it was equivalent to writing, "per some steamer of the Shipping Board (or substitute)." If a steamer other than one belonging to the Shipping Board had been employed, would the owner thereof be the principal? Aside from the fact,

that it would have been so easy to affirmatively state who was the principal, there is ample in the contracts to justify the conclusion on the part of the shipper that the Strachan Shipping Company was bound.

The freight contract had in its caption "Strachan Line." Indorsed on the back was: "In consideration of Strachan Line accepting the shipment," etc. Further: "This contract * * * is further conditional upon the continuance of the steamship company's service; * * *" and "* * * the steamship company may, at its option, cancel this contract." No "steamship company" is included in terms in the contract, but surely that can be more fairly held to refer to "Strachan Line," whose name is given conspicuous place in the caption, rather than to "Shipping Board," whose appearance is only in connection with what steamer is to be employed.

Then, too, the bills of lading have in large type, in the most conspicuous place: "Strachan Line. Strachan Shipping Co. Agents." The receipt is of cotton "to be transported by the steamship Kisnop of the line from Brunswick, and bound for the port of Manchester." The only "line" that has been mentioned was the "Strachan Line." It is true that both the freight contracts and bills of lading were signed "Strachan Shipping Company, Agents," but it is also true that no indication was given in such signatures as to who was the principal or that the agents did not intend to be held.

[3] 3. Is it necessary for libelant to aver that libelee is a common carrier, or that libelee was negligent, or that the failure to deliver the cotton did not come within the lawful exceptions of the contract?

The contract as a whole implies, though it does not definitely state, that libelee is a common carrier. Ships holding themselves out to carry goods for all persons indifferently who apply are common carriers. 4 R. C. L. p. 555.

"By the settled law, in the absence of some valid agreement to the contrary, the owner of a general ship, carrying goods for hire, whether employed in internal, in coasting, or in foreign, commerce, is a common carrier, with the liability of an insurer against all losses, except only such two irresistible causes as the act of God and public enemies." Liverpool & G. W. S. Co. v. Phenix Ins. Co., 129 U. S. 397, 437, 9 S. Ct. 469, 470 (32 L. Ed. 788).

A "general ship" is "one which is employed by the charterer or owner on a particular voyage, and is hired to a number of persons, unconnected with each other, to convey their respective goods to the place of destination." Bouv. Law Dict. vol. 2, p. 1348.

But whether libelee be a common carrier, and therefore bound by the principles applicable thereto, or a private carrier, bound by the terms of its contract, the obligation in this case is substantially the same; i. e., to transport cotton from Brunswick to Manchester and there deliver the same, unless prevented by certain conditions set forth in the contract. In neither case is it necessary for libelant to allege or prove negligence. Proof of delivery of the cotton to libelee at Brunswick and failure to deliver it at Manchester places upon libelee the burden of disproving libelant's case, or proving that such failure to deliver came within some one or more of the excepted perils. 4 R. C. L. pp. 916, 917, 920, 923, 924. The reasons set forth in L. & N. R. Co. v. Warfield & Lee, 129 Ga. 473, 59 S. E. 234, seem equally applicable to a contract with a private carrier as with a common carrier, where the contract is to deliver and the basis of the action is failure to deliver. In either case the action is in the nature of assumpsit, and all that is necessary to aver is the contract, receipt of goods, and failure to deliver.

Especially is all of this true in admiralty, where the requirements of pleading are much less strict than at law. Benedict's Admiralty (4th Ed.) par. 291, p. 209; The Spica (C. C. A.) 289 F. 436; Dupont v. Vance, 60 U. S. (19 How.) 162, 15 L. Ed. 584.

[4] Upon proof by the libelant of failure to deliver goods according to contract, the burden is on the libelee to show that such failure was occasioned by something for which he was not responsible. Clark v. Barnwell, 53 U. S. (12 How.) 272, 13 L. Ed. 985; The Folmina, 212 U. S. 354, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748. Pleadings are sufficient when complying with this principle.

The exceptions of libelee are therefore dismissed.