## THE LASSELL.

District Court, E. D. New York.

June 18, 1925.

Bigham, Englar & Jones, of New York City (T. C. Jones and J. W. Ryan, both of New York City, of counsel), for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City (Ray R. Allen and Mr. Brown, both of New York City, of counsel), for claimant.

INCH, District Judge.

This is a libel filed by the owner of a large quantity of raw linseed, shipped by the steamship Lassell, loaded at and carried from Rosario, in the Argentine, to New York.

When the said steamship arrived at New York and was unloaded, the linseed, some of which was in bags and some in bulk, and stowed in the bottom of hold No. 1, was found badly damaged by sea water. In fact, it seems beyond dispute that there was a large quantity of sea water then in the hold, and that this had caused the damage.

The question litigated was, How did this water get into the hold?

If it got in by neglect, such as would arise from a failure to use proper covering or continued covering of the hatch, during stormy weather, or from some other failure to use due care, the liability of the steamship would be established. If, on the other hand, the water got in through some cause or other than an unseaworthy vessel or because of some reason expressly excepted in the bill of lading, the ship would not be liable.

The bill of lading acknowledged that the cargo was shipped in good order and condition, and a prima facie case was therefore established by libelant. The Folmina, 212 U. S. 354, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748.

The burden of showing, under the circumstances of this case, how the sea water got in to damage the linseed, as it admittedly did, was upon claimant. Herman v. Compagnie Generale (C. C. A.) 242 F. 859; Jamison v. New York Steamship Co. (D. C.) 241 F. 389; The Citta di Palermo (D. C.) 226 F. 522. It was necessary, therefore, for claimant to produce proof, sufficient to support, reasonably, a finding of fact in regard to this important question of the cause for the entrance into the hold of the sea water.

I do not understand that a theory is sufficient, particularly so where that theory can be argued to be faulty on facts proved. The case, therefore, must be decided really by deciding the question of whether or not the claimant has sustained the burden resting upon it. The cause for the entrance of the water in such quantity as was admittedly present is to me a mystery.

A brief reference to the facts is necessary.

The linseed was stowed in the No. 1 lower hold. It consisted of linseed in bulk stowed from skin to skin of the ship and in the usual manner to prevent shifting. On top of this bulk linseed were some 4000 bags of linseed, in tiers, all the way across the hold, stowed against cargo battens and dunnage. A certain amount of this linseed (which is as fluid as water) naturally slipped through the bags and partially filled these spaces between the battens and the skin of the ship in the hold. Other cargo

was carried in the 'tween deck immediately above consisting of a quantity of bags of coffee, and in the upper 'tween deck there was a quantity of dry hides and goat skins.

When the steamship was unloaded at New York and the stevedores were at work in this lower hold and had gotten down about 8 or 9 feet, a stream of water was observed, and from then on much of the linseed was found to be damaged. Some of this linseed was so wet that it could not be "sucked up." The water when first observed was at the port side and in the wings. At that time they had not gotten down to the bulk cargo. Subsequently the water was found both on the port side and starboard side. The loss, which must be borne by some one, is substantial. The stevedores found that the center bags of linseed were not wet and were in fine condition, and there is testimony that the cargo, above referred to, of coffee, dry hides, etc., was not in any way damaged by water.

The situation, therefore, was that, while there was an unusual amount of sea water on all sides of the lower hold, and certain bags of linseed were wet and damaged on both sides of the hold, yet, if the water had come down through the middle of the hold, nevertheless the center of the linseed and the rest of the cargo in that hold was dry.

Claimant depends largely on two theories:

One, that the perils of the sea caused the damage. For this it relies on testimony that for five days (from February 17th to the 22d) there was a very rough sea, with considerable pitching and rolling of the ship, and about five days later (for two days), the ship ran into a hurricane with a dangerous and rough sea.

The other theory relied on by claimant is that, when the ship was discharged in New York and the sea water found in the hold No. 1, the owners had an examination made by some boiler makers, who, after a hammer test, etc., discovered two and possibly three rivets, on the hold's port side, which were somewhat loose. A hose test disclosed a slight "weeping," and accordingly that all the water came through these two or three rivets, caused by this extreme weather encountered, and their defective condition was latent.

The answer to these contentions by the claimant is that there is insufficient proof before me on which to base a finding of fact.

Certainly the water must have come in from the outside, and, to be sure, the theory that it came through the loose rivets, all of which were on the port side, provides the most reasonable guess, yet, when the evidence is all considered, particularly as to water being also found on the starboard side, and the difficulty referred to in the evidence of getting the water over to that side, it leaves even this argument as much against as for this theory. One view is as definite as the other.

There is no proof in the record of the exact quantity of water that entered nor the amount that would in theory enter through these two or three rivets, and, while it may be conceded that a quantity of water may find its way through certain "weepy" rivets, yet, for the purpose of making a finding of fact, the proof remains most uncertain.

The steamship was a comparatively new steamship. It was registered A No. 1 with Lloyds, and duly surveyed from time to time, and, if the water all came in through the rivets, it would seem to have been a latent defect. There is, however, no evidence before me on which I can do more than guess at the cause that permitted the sea water to enter.

The dry center of the hold and two or possibly three loose rivets might account for the entrance of some water on the port side. It must have come from some place, but I confess I cannot find on the evidence, reasonably weighing all of it, that this was the proximate cause of the entry of the considerable quantity found both on the port, starboard sides and the wings of the hold. It would also be mere conjecture to assume on the facts here that the damage was done by a peril of the sea. Proof of a storm alone is not sufficient.

The testimony taken both by deposition, and in open court, at best simply advances what seems to be admitted by such witnesses to be a theory.

I am compelled, therefore, to find that the claimant has not sustained the burden of proof as to the defenses asserted by it, and, as libelant had made out a prima facie case, it seems to me it is entitled to recover.

Decree for libelant.