JOHNSON, P. J.
This is an appeal by plaintiff from a judgment rendered against it in the municipal court.
The action is one growing out of damage to a quantity of pulp-board dishes belonging to plaintiff, which were shipped in June, 1929, from New York to Los Ángeles on board the steamship “K. I. Luclcenbach”, owned and operated by the defendant. The damage was caused by leakage of fuel oil taken aboard after the vessel reached San Pedro. The leakage was due to a break in a galvanized iron sounding-pipe which connected with a fuel tank located in the stern of the ship and called the after-peak tank. This sounding-pipe served as an aid in determining the level to which the oil fell as used. The pipe ran vertically from the upper deck to the bottom of the tank, passing through the hold where the dishes were stored, and was screwed into a flat flange bolted to the deck. Above the deck the sounding-pipe, together with another pipe and a valve rod, was inclosed' in a wooden casing except for an open space of about an inch close to the deck.
The steamship was engaged in intercoastal trade between the Pacific Coast and North Atlantic ports via the Panama Canal. She started her westward voyage in June, 1929, from Boston, stopping on the way at New York to take cargo including the goods of plaintiff. On her arrival at San Pedro on July 14th the after-peak tank was there filled with a new supply of oil; and about two hours later leakage through the break in the sounding-pipe was discovered, as a result of which plaintiff’s goods were damaged in part.
The case is governed by the maritime law as relaxed by the so-called Harter Act adopted February 13, 1893. (27 Stat. 445; 46 U. S. C. A., secs. 190-195.) Prior to the Harter Act, except for limitations in some particulars by special contract, there was a warranty on the part of the ship owner that his ship was seaworthy at the beginning of the voyage. The purpose of the Harter Act was to relieve the stringency of this rule. The law is framed so *Supp. 779 as to distinguish between the risks to be guarded against by insurance and those for which redress may be had from the vessel or its owners. While the statute lays upon the ship owner the absolute obligation to use due diligence to make his vessel seaworthy and capable of performing her intended voyage, it provides that if due diligence is used to make the vessel in all respects seaworthy at the beginning of the voyage, then neither the vessel nor the owner shall be liable for losses arising from faults in navigation or management of the vessel or from perils of the sea and certain other causes.
The fundamental question in this case is, then, whether due diligence was used to make the vessel in all respects seaworthy before she left Boston on her voyage to the Pacific Coast. A prima facie case was made out by plaintiff by showing receipt of the merchandise by defendant in good order and condition at New York, and delivery at destination in damaged condition. (The Folmina, 212 U. S. 354, 361 [15 Ann. Cas. 748, 53 L. Ed. 546, 29 Sup. Ct. Rep. 363]; The Rosalia, 264 Fed. 285, 288.)
Such damage raised a presumption of unseaworthiness at the beginning of the voyage; and the burden was then cast upon the defendant to show affirmatively that due diligence was used to make the vessel in all respects seaworthy, and that the damage was proximately caused by a peril from the consequences of which defendant was exonerated by the provisions of the bill of lading and the federal statute. (The Medea, 179 Fed. 781, 784-786.)
In other words, the ship owner’s defense is brought under the evidentiary rule applied when the principle of res ipsa loquitur is invoked. (The Josephine, 37 Fed. (2d) 928, 930.)
There is no presumption in behalf of the ship owner that he fulfilled the condition precedent on which exemption in his favor depends. In order to have the benefit of the immunity afforded by the Harter Act, he is bound to make proof that due inspection was had, and that the ship was in all respects seaworthy at the beginning of the voyage or at least that due diligence to that end had been used. (The Wildcraft, 201 U. S. 378, 386, 387 [50 L. Ed. 794, 26 Sup. Ct. Rep. 467]; The Southwark, 191 U. S. 1, 13, 14 [48 L. Ed. 65, 24 Sup. Ct. Rep. 1]; International Nav. Co. *Supp. 780 v. Farr & Bailey Mfg. Co., 181 U. S. 218, 225 [45 L. Ed. 830, 21 Sup. Ct. Rep. 591]; Compagnie Maritime Francaise v. Meyer, 248 Fed. 881, 884; Pacific Coast S. S. Co. v. Bancroft, 94 Fed. 180, 196.)
In an effort to sustain the burden of proof imposed upon it, the defendant undertook to show that due diligence was used to make the vessel entirely seaworthy before it left Boston, and ascribed the break in the sounding-pipe either to a peril of the sea or to a latent defect not discoverable by the exercise of due diligence.
The primary question thus presented on this appeal is whether the burden of proof was met by defendant by showing that the steps followed to assure complete seaworthiness were such as to constitute due diligence.
The evidence shows that the pipe, being inclosed in a wooden easing, was invisible from the deck, except at an open space of about an inch where the pipe passed through the deck into the hold. The only inspection of the pipe at Boston was a scant visual inspection, made by use of a flashlight directed through that small opening in the casing close to the flange into which the pipe was screwed. Such inspection was made together by the chief officer and the chief engineer.
Later the chief officer accompanied United States local inspectors on their annual inspection of the ship; but it does not appear that anything more than a casual inspection of the sounding-pipe was made then. At that time there was no leakage into the hold; and while it is said that the tank was under pressure, the evidence is silent as to whether the pressure was equivalent to that created when the tank was filled at San Pedro. The diligence required is diligence in making the vessel in fact seaworthy and not merely in procuring a certificate of seaworthiness. (The Abbazia, 127 Fed. 495, 496; Compagnie Maritime Francaise v. Meyer, 248 Fed. 881, 885 [160 C. C. A. 639].)
At no time was any attempt made to remove any part of the casing at Boston or to subject the pipe to any real test of soundness. The examination made of the sounding-pipe appears to have been of a casual or perfunctory character; and the fact that the pipe was inclosed did not lessen the obligation to remove at least a sufficient portion of the casing for a thorough test and inspection, and facilities for *Supp. 781 that, purpose should have been provided. (The Elkton, 35 Fed. (2d) 49, 52; W. R. Grace & Co. v. Panama R. Co., 285 Fed. 718, 722; The Rappahannock, 184 Fed. 291, 293; The Alvena, 79 Fed. 973, 975.)
The officers may have pursued their habitual mode of inspection; but an ineffectual practice furnishes no excuse for omission to use all reasonable precautions to assure beginning the voyage with a thoroughly seaworthy ship. (The Edwin I. Morrison, 153 U. S. 199, 215 [38 L. Ed. 688, 14 Sup. Ct. Rep. 823]; The Tenedos, 137 Fed. 443, 447; affirmed, 151 Fed. 1022.)
If facilities for a true test had been provided, an inspection meeting the requirements of the Harter Act could then have been had. (The Alvena, 79 Fed. 973, 975.)
The undertaking as to seaworthiness is not discharged when want of fitness is the result either of laches or of a latent defect discoverable by use of due diligence. (The Irrawaddy, 171 U. S. 187, 190 [43 L. Ed. 130, 18 Sup. Ct. Rep. 831].)
The Harter Act contemplates more than casual inspection. (The Agwimoon, 24 Fed. (2d) 864, 866; affirmed, 31 Fed. (2d) 1066.) And if failure to use reasonable tests is left in doubt, the doubt must be resolved against the ship owner. (The Folmina, 212 U. S. 354, 363 [15 Ann. Cas. 748, 53 L. Ed. 546, 29 Sup. Ct. Rep. 363]; The Southwark, 191 U. S. 1, 16 [48 L. Ed. 65, 24 Sup. Ct. Rep. 1]; The Medea, 179 Fed. 781, 791; The Rosalia, 264 Fed. 285, 288; The Lassell, 53 Fed. (2d) 687 [1925 A. M. C. 1066, 1069].)
A ship owner’s obligation as a carrier approaches the responsibility of an insurer; and, damage occurring, it follows that an inference of unseaworthiness is justified until and unless the carrier shows that the damage complained of was due to a peril of the sea or some cause other than unseawmrthiness of his vessel. (The Josephine, 37 Fed. (2d) 928, 930, 931.)
In making inspection the owner is not justified in relying on mere external appearances in place of known tests, nor is the requirement of due diligence satisfied by mere selection of competent inspectors. (Nord-Deutscher Lloyd v. President etc. of Ins. Co., 110 Fed. 420, 425; The Leerdam, 17 Fed. (2d) 586, 587; Navigazione Libera Triestina v. Garcia & Maggini Co., 30 Fed. (2d) 62, 64.)
*Supp. 782 If, instead of making careful examinations and tests, the owner is satisfied to rely on external appéarances or on a superficial survey, he assumes the responsibility for such defects as may exist and which a diligent inspection would reveal. (Warner Sugar Ref. Co. v. Munson S. S. Line, 23 Fed. (2d) 194, 197; The Southwark, 191 U. S. 1, 16 [48 L. Ed. 65, 24 Sup. Ct. Rep. 1].)
As regards the sounding-pipe in this case, due diligence would seem, under the general current of authority, to have made a hammer test, or something equivalent to it, imperative. (The Edwin I. Morrison, 153 U. S. 199, 213 [38 L. Ed. 688, 14 Sup. Ct. Rep. 823]; The H. A. Rock, 23 Fed. (2d) 198, 200; The Charlton Hall, 285 Fed. 640, 641; The Rappahannock, 184 Fed. 291, 293, 294; Compagnie Maritime Francaise v. Meyer, 248 Fed. 881, 885 [160 C. C. A. 639].)
The cause of the break is really left to conjecture-. It occurred close to the top of the flange fastened to the deck, and was a clean new break. It does not appear from the evidence what the serviceable age of the pipe was, how long it had been in use, or to what extent, if at all, it had previously been tested. As is said in The Rappahannock, 184 Fed. 291, 294, “nothing in use will wear forever, and as time goes on every appliance of this sort draws near the end of its life”.
Even if the defect was latent, it was nevertheless the duty of the ship owner to use due diligence to discover it. For even when such defects exist in an appliance, it is the purpose of the Harter Act to relieve the ship owner of liability for only those latent defects which are not discoverable by the utmost care and diligence. (The Irrawaddy, 171 U. S. 187, 192 [43 L. Ed. 130, 18 Sup. Ct. Rep. 831].)
And conjecture as to the existence of a latent defect will not be permitted to take the place of proof. (The Folmina, 212 U. S. 354, 363 [15 Ann. Cas. 748, 53 L. Ed. 546, 29 Sup. Ct. Rep. 363]; The Edwin I. Morrison, 153 U. S. 199, 212 [38 L. Ed. 688, 14 Sup. Ct. Rep. 823]; Navigazione Libera Triestina v. Garcia & Maggini, 30 Fed. (2d) 62, 64.)
There is testimony that in the Caribbean Sea the vessel encountered heavy weather for a couple of days and that the ship rolled and twisted about. The chief officer expressed the opinion that damage was done to the pipe in *Supp. 783 such twisting. But the weather described was not such as to create a peril of the sea as understood in admiralty law, nor was any damage done to the casing or to the other appliances inclosed therein. To constitute a peril of the sea, the weather, wind or seas must be catastrophic or of such irresistible force or overwhelming power as to be beyond the ordinary exertions of human care and skill to guard against. (The Giulia, 218 Fed. 744, 746; The Arakan, 11 Fed. (2d) 791, 792.)
Mere twisting of the ship in heavy weather, whereby an incipient crack is caused to open, is not classed as a peril of the sea. (The Rappahannock, 184 Fed. 291, 294, 295.) And as was said by Judge Hough in The Rosalia, 264 Fed. 285, 288, the peril must be “something so catastrophic as to triumph over those safeguards by which skilful and vigilant seamen usually bring ship and cargo into port in safety”.
Moreover, even if damage occurs in a storm of violent intensity, the ship owner is not exempt from liability, if due diligence is not shown to have been used to make the vessel throughly seaworthy at the beginning of the voyage. (Atlantic Transport Co. v. Rosenberg Bros. & Co., 34 Fed. (2d) 843, 845.)
In reference to the adequacy of the inspection made at Boston the defendant relies particularly on the case of E. 1. Dupont de Nemours & Co. v. American Hawaiian S. S. Co., 41 Fed. (2d) 226. There, on arrival of the defendant’s ship at San Pedro, after a voyage from Boston, a certain oil-tank was refilled, with the result that oil leaking through a large rivet hole caused damage to cargo belonging to the plaintiff.
The court held that a visual examination of the tank at Boston, in connection with other facts, constituted due diligence on the part of the ship owner. But in that case there was a sump at each end of the tank into which any leakage would drain; and planks over the tank top and at the sumps were taken up, and examination was made for signs of leakage. No traces of leakage were found, however, though the tank was full of oil at the time. Moreover, on the eastward trip through the Panama Canal, the oil taken into the tank at San Pedro before sailing had been subjected to sufficient expansion by heat to search out an opening of *Supp. 784 the size of a large rivet hole; yet no leakage had occurred on that voyage. There was also evidence that “a rivet may pop out at any time”. It was only because of these accompanying facts that the court concluded that due diligence was used to secure seaworthiness of the vessel when she left Boston.
There is not a comparable situation in the case before us; and in relying on a casual examination without making any adequate tests of the sounding-pipe, the defendant took the risk of being unable to prove satisfactorily its soundness. As was said in The Edwin I. Morrison, 153 U. S. 199, 215 [38 L. Ed. 688, 14 Sup. Ct. Rep. 823], mere conjecture as to the cause of the break cannot relax the important and salutary rule in respect of seaworthiness.
From the record, we think that it must be said as a matter of law that the diligence required to secure the benefits contemplated by the Harter Act was not exercised, and that accordingly defendant is not exempt from liability in this action.
The damage sustained by plaintiff is .shown by the evidence to have amounted to $201.56.
The judgment is reversed and the cause remanded to the municipal court, with direction to vacate the judgment entered, and in lieu thereof to enter judgment in favor of plaintiff against defendant for $201.56, together with the taxable costs paid or incurred by plaintiff in the trial court and the costs of plaintiff on this appeal.
Goodell, J., and Conlan, J., concurred.