## AMERICAN AGRICULTURAL CHEMICAL CO. v. BROOKLYN & BUFFALO NAV. CO., Inc.

District Court, W. D. New York.

Feb. 18, 1932.

Dempsey & Fogle, of Lockport, N. Y. (John B. Richards, of Buffalo, N. Y., Glen R. Bedenkapp, of Lockport, N. Y., and Laurence E. Coffey, of Buffalo, N. Y., of counsel), for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan and Edmund F. Lamb, both of New York City, of counsel), for respondent.

ADLER, District Judge.

A cargo of phosphate rock of approximately 2,784 tons was laden on barges of respondent at Carteret, N. J., and transferred at Buffalo, N. Y., to the Barge Montezuma for delivery to the libelant at Cleveland, Ohio. The shipment was made under through bills of lading, which, libelant contends, superseded a charter in the form of a letter from libelant to respondent dated October 1, 1926. The letter concludes with the following language: "We will arrange to place marine insurance on the cargo for the invoice value of same, in addition to the freight charges of $4.10 per gross tons, for our account."

The above-quoted paragraph in the letter initiating the charter is the basis of one of the defenses pleaded by the respondent to the effect that the insurance was for the benefit of both carrier and shipper.

The Montezuma in which the entire shipment was laden for carriage from Buffalo to Cleveland was a wooden barge built in 1903, and was 342 feet long, 40 feet beam, and 26 feet deep. It had a single cargo hold which extended from stem to stern. The American Bureau of Shipping classified the barge at 90, the lowest grade which permits a ship to carry dry and perishable cargo, and that classification extended to October 31, 1926.

On October 31, 1926, the Montezuma in tow of the steamer Lake George left Buffalo. The weather was fair and so continued until within a few miles from Cleveland. When within four or five miles from Cleveland, the evidence is that the wind had reached a veloc-

ity of forty miles an hour. At about midnight on the night of November 1st, the steering gear of the Montezuma got out of order and could not be repaired. About this time water began to come into the barge, and the captain cut the cable between the steamer and the barge and let go of the anchors about a mile outside of the Cleveland breakwater. The next morning two tugs took the barge inside the breakwater · at Cleveland and beached it. It was found that there were 13 feet of water in the barge when it was beached. It was stipulated that the cargo was delivered in a damaged condition.

The answer of the respondent alleges three defenses. The first defense that the insurance carried was for the benefit of both carrier and shipper is based upon the paragraph in the letter above quoted. In my opinion the language of the paragraph in the letter does not establish a contract on the part of the shipper to insure the cargo and freight for the benefit of both the shipper and the carrier.

The third defense, that the Harter Act (46 USCA §§ 190–195) is applicable, will not be considered separately, as it does not appear that the damage to the cargo was due to faults or errors of navigation.

The second defense, that the loss of the cargo was due to the dangers of navigation, raises the main question of the seaworthiness of the Montezuma.

The respondent was bound to furnish a vessel that was seaworthy and suitable for the service on which it was employed. Under this rule a latent defect is no excuse. The Edwin I. Morrison, 153 U. S. 199, 14 S. Ct. 823, 38 L. Ed. 688. The respondent's barge carried the cargo safely until it ran into heavy winds before it reached Cleveland. The evidence is that there was a forty-mile wind. From all the evidence I conclude that the weather was not unusual on the Great Lakes. The steamer which towed the barge was not at any time in distress. I am led to the conclusion that a cargo-carrying boat that could not weather the conditions as they existed at the time this trouble occurred was not seaworthy. That the steering gear got out of order and could not be repaired under those conditions is in itself an evidence of unseaworthiness. The libelant presented evidence that the barge had been in a collision a short time previous to this trip and had been injured. Repairs had been made to it, but whether or not that injury was the cause of the leaks which resulted in the boat making 13 feet of water despite the constant use of the pumps does not matter. In this case the burden was on the carrier to show that the damage was caused by one of the perils for which it was not responsible. The Folmina, 212 U. S. 354, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748. This, in my opinion, it has not done.

A decree may be submitted in favor of the libelant.