**ALLIANCE TOBACCO CO., Inc., v. UNITED STATES.**

District Court, S. D. New York.
July 24, 1935.

Single & Tyler, of New York City (Wilmer H. Eberly, of New York City, of counsel), for libelant.

F. W. H. Adams, U. S. Atty., of New York City (William E. Collins, Sp. Asst. to U. S. Atty., of New York City, of counsel), for respondent.

GODDARD, District Judge.

This is a suit to recover for water damage to a shipment of 103 bales of leaf tobacco carried on the steamship West Eldara operated by the respondent on a voyage from Antwerp sailing from there on January 12, 1928, and arriving at Hoboken on February 2, 1928. The libel alleges the delivery at Antwerp of the bales of tobacco in good order and condition and their outturn at New York City damaged as a result of wetting. The answer, aside from admitting merely formal allegations contained in the libel, denies the rest of them and sets up as a separate defense perils of the sea and sweat excepted by the bill of lading, and the defenses that the suit was not commenced within the one year period as provided in the bill of lading; also, that this court is without jurisdiction because the suit was not commenced within the period of two years after the cause of action arose as required by the Suits in Admiralty Act.

The steamship West Eldara, a vessel 409 feet long 54 feet beam, having 5 cargo holds, received from Corbisier Freres & Dalmee 103 bales of leaf tobacco at Antwerp on January 12, 1928, and issued a bill of lading stating that the bales of tobacco were received in apparent good order and condition. The tobacco had come from Turkey and the testimony of the shippers taken under a commission states that the bales of tobacco were outwardly in good order when they left the warehouse in Antwerp. The master of the West Eldara admitted that there was no damage noted when it was loaded. The bales of tobacco were stowed in No. 5 'tween deck where other cargo was also stowed. No. 5 'tween deck was fitted with four ventilators; the two after ventilators are not closed at any time during the voyage; the two forward ones were probably closed when leaving the English Channel, but were open in good weather and the covers removed. The steamship West Eldara proceeded by the southern route, passing a little north of Bermuda and proceeding thence to New York, the voyage taking twenty days, no stop being made between Antwerp and New York. Leaving Antwerp the vessel had experienced some heavy weather for a period of about one week. The force of the wind reached 9 and 10 on the Beaufort scale for several hours. Between January 21 and January 28 there was moderate weather. On January 29 the wind increased to force 8 and the vessel rolled and pitched. This weather continued until January 31 when it again moderated to force 5, wind northwest. The master stated that the weather encountered was just about the average for that season of the year. The tobacco was examined at a pier in Hoboken by surveyors who agreed upon the amount of damage, 51 bales showing heavy damage and the remaining 52 bales being less seriously damaged. The testimony is that 51 bales were all more or less stained by contact with water. The appearance of the bales indicated that they had stood in water of varying depths; some of the bales showed a watermark on the outside of about 3 inches from the bottom of the bales. The flat sides of the 52 bales were more or less moldy on the surface of the bales which rested either on the deck or on the dunnage boards. The dunnage on which the bales rested consisted of 1 inch boards, one layer running fore and aft, and the other athwartship; how far apart the boards were does not appear. There were four scuppers in the hold and the testimony is that they were clear at the time the tobacco was loaded.

According to the ship's log the temperature on loading at Antwerp on January 12 was 37 degrees; the temperature of the air and water up to and including January 29 varied only slightly. On that day the temperature was 60 and the water 68; on the 30th the temperature of the air was 60 and the water 70; on the 31st the temperature of the air was 60 and the water 72; on February 1 the temperature of the air was 34 and the water 50; on February 2 the temperature of the air varied from 25 to 32 and the temperature of the water is not given.

The West Eldara arrived off quarantine at 3:20 a. m. and docked at Pier 2, Hobo-

ken, at 12:50 p. m. that day and commenced discharging at 1:30 p. m.

█ The burden is upon the vessel to establish that the damage was occasioned by cause excepted in the bill of lading where the goods were received in apparent good order and condition and after the voyage were damaged. Jahn v. The Folmina, 212 U. S. 354, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748; Habicht, Braun & Co. v. Osaka Shosen Kaisha, 54 F.(2d) 265 (C. C. A. 2).

█ I do not think the respondent has shown that the damage was due to sweat, which is the principal defense urged. In the first place, the discoloration extending up the sides of the bales for 3 inches and the condition of the tobacco in this area. indicating that water had actually penetrated into the bales was quite conclusive evidence that they had been standing in water or that a substantial amount of water had accumulated on the deck and slopped up against them and this, in my opinion, could not have happened if the bales had been properly dunnaged, so that they did not come in contact with the deck, or unless an unusual amount of water had accumulated in the hold, either because the scuppers had been permitted to become clogged or for some other unexplained reason. It is true that one of the respondent's witnesses testified that when the hold was open he saw sweat on the sides of the vessel, but the master of the West Eldara admitted that as there was little difference in the temperature except just before the West Eldara arrived in New York and that in those two days enough sweat could not have formed to damage the bales of tobacco to the extent shown by the surveyors' report. These surveyors represented the vessel as well as the cargo interests. Moreover, there was no damage to any cargo in 1, 2, and 3 holds, and only a slight damage to one item in No. 4, notwithstanding these, as well as No. 5 hold, carried much cargo that would have been affected by sweat if the condition of sweat claimed by the respondent existed. There was no explanation of the unusual condition in No. 5 hold.

█ Respecting respondent's contention that this court is without jurisdiction because the suit at bar was not commenced within the two-year limitation contained in Suits in Admiralty Act and that this suit was not commenced within the one year period described in the bill of lading, it is argued by respondent that a substituted delivery arose under the bill of lading of February 2, 1928, the date when the tobacco was discharged upon the wharf, and that as the suit was not filed until February 4, 1930, more than two years had expired. The libelant relies upon the Suits in Admiralty Act § 5, as amended on June 30, 1932 (46 USCA § 745),[1] contending that the present suit is based upon a prior action at law, which was commenced within the limitation period, and that it is maintainable under the Suits in Admiralty Act, as amended, and is not barred by limitation of one year in the bill of lading.

On February 1, 1929, suit was brought by the Alliance Tobacco Company in the city court of the city of New York against the Black Diamond Steamship Company and the United States Shipping Board Emergency Fleet Corporation to recover the damage now sought by libelant. On March 5 and 6, 1929, the attorneys for the respective parties filed their answer. On January 6, 1930, the case of Johnson v. United States Shipping Board Emergency

---

[1] "§ 745. *Causes of action on which suits may be brought: limitations.* Suits as authorized in this chapter shall be brought within two years after the cause of action arises: Provided further, That the limitations in this section contained for the commencement of suits hereunder shall not bar any suit against the United States or the United States Shipping Board Merchant Fleet Corporation, formerly known as the United States Shipping Board Emergency Fleet Corporation, brought hereunder on or before December 31, 1932, if such suit is based upon a cause of action whereon a prior suit in admiralty or an action at law or an action under subdivision (1) of section 250 of Title 28, was commenced prior to January 6, 1930, and was or may hereafter be dismissed because not commenced within the time or in the manner prescribed in this section, or otherwise not commenced or prosecuted in accordance with its provisions: Provided further, That such prior suit must have been commenced within the statutory period of limitation for common-law actions against the United States cognizable in the Court of Claims: Provided further, That there shall not be revived hereby any suit at law, in admiralty, or under subdivision (1) of section 250 of Title 28 heretofore or hereafter dismissed for lack of prosecution *after filing of suit.* (As amended June 30, 1932, c. 315, 47 Stat. 420.) "

Fleet Corporation, 280 U. S. 320, 50 S. Ct. 118, 74 L. Ed. 451, was decided in the Supreme Court holding that the remedies given by the Suits in Admiralty Act were exclusive in all cases where a libel might be filed under it and that no suits could be maintained under that act against the United States in the Court of Claims or in any action at law in the state or federal courts.

On February 4, 1930, the present admiralty suit was commenced against the United States. The answer to this suit was served by the United States in April, 1930. From the examination of the pleadings in the case at bar, it is plain that they are based upon the same cause of action. On January 6, 1930, the City Court action was discontinued by stipulation. On June 30, 1932, the Suits in Admiralty Act was amended so as to read as above. It is to be noted therefore that the first suit was commenced within the period of one year provided for in the bill of lading, and though perhaps not literally "dismissed" was voluntarily discontinued because not commenced in the manner prescribed in section 745. It was not "dismissed for lack of prosecution," and under the circumstances may, I think, be regarded as the equivalent of a dismissal for lack of jurisdiction. See United States v. Galveston Dry Dock & Construction Co., 76 F.(2d) 277 (C. C. A. 5). The Suits in Admiralty Act, as amended, preserved the earlier action which "was or may hereafter be dismissed" and covers the present situation.

Accordingly, the libelant may have a decree with the usual reference to ascertain the amount of damage.